SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
-------------------------------------------------------------------------X
GINO FIERMONTE,

                        Plaintiff,

          -against-

AIRPORT DESIGN CONSULTANTS, INC., BURNS ENGINEERING, INC., SAVIK & MURRAY, CONSULTING ENGINEERS, PLLC, SAVIK, MURRAY & AURORA CONSTRUCTION MANAGEMENT CO., LLC, SAVIK AND MURRAY, LLP, LONG ISLAND POWER AUTHORITY, TOWN OF ISLIP, JOHNSON, KUKATA, & LUCCHESI, P.C. and VASHTI DEONARAIN,

                        Defendants.
-------------------------------------------------------------------------X

Index No.: 205623/2022

**AMENDED COMPLAINT**

Plaintiff, above named, complaining of the Defendants by his attorneys, **WALKER & MACKENZIE, P.C.**, respectfully alleges, upon information and belief, as follows:

1. At all times mentioned herein, Plaintiff was a resident of the State of New York, County of Suffolk.

2. At all times mentioned herein and on September 8, 2021, Plaintiff was employed by the TOWN OF ISLIP.

3. At all times mentioned herein, there existed an airport known as Long Island MacArthur Airport located at 100 Arrival Avenue, the Town of Islip, County of Suffolk, State of New York (hereinafter "MacArthur Airport).

4. At all times mentioned herein, there existed Runway 6/24 at MacArthur Airport (hereinafter "Runway 6/24").

5. At all times mentioned herein, there existed Taxiway Golf at MacArthur Airport (hereinafter "Taxiway Golf").

6. At all times mentioned herein, there existed Runway Sign G223 at MacArthur Airport (hereinafter "sign G223").

7. At all times mentioned herein, there existed the control tower (hereinafter "the tower") at MacArthur Airport.

8. At all timed mentioned herein, there existed the runway light control panel within the tower.

9. At all times mentioned herein, there existed a building located across the street from the tower on Clark Avenue known as "the Vault" (hereinafter "the vault").

10. At all times mentioned herein, there existed the control panel within the vault.

11. On September 8, 2021 and prior thereto, there existed no written Lockout/Tagout procedures at MacArthur Airport.

12. On September 8, 2021 and prior thereto, there existed no written Lockout/Tagout procedures in the vault.

13. On September 8, 2021 and prior thereto, there existed no written Lockout/Tagout procedures in the tower.

14. On September 8, 2021 and prior thereto, there existed no Lockout/Tagout station at MacArthur Airport.

15. On September 8, 2021 and prior thereto, there existed no Lockout/Tagout station in the vault.

16. On September 8, 2021 and prior thereto, there existed no Lockout/Tagout station in the tower.

17. On September 8, 2021 and prior thereto, the electricity/power supply to sign G223 was controlled and/or regulated in the tower.

18. On September 8, 2021 and prior thereto, the electricity/power supply to sign G223 was controlled and/or regulated in the vault.

19. On September 8, 2021 and prior thereto, there existed additional methods and/or means to control and/or regulate the electricity/power supply to sign G223 other than the tower and the vault.

20. On September 8, 2021 and prior thereto, the electricity/power supply to Runway 6/24 was controlled and/or regulated in the tower.

21. On September 8, 2021 and prior thereto, the electricity/power supply to Runway 6/24 was controlled and/or regulated in the vault.

22. On September 8, 2021 and prior thereto, there existed additional methods and/or means to control and/or regulate the electricity/power supply to Runway 6/24 other than the tower and the vault.

23. On September 8, 2021 and prior thereto, the electricity/power supply to Taxiway Golf was controlled and/or regulated in the tower.

24. On September 8, 2021 and prior thereto, the electricity/power supply to Taxiway Golf was controlled and/or regulated in the vault.

25. On September 8, 2021 and prior thereto, there existed additional methods and/or means to control and/or regulate the electricity/power supply to Taxiway Golf other than the tower and the vault.

26. At all times mentioned herein, Defendant AIRPORT DESIGN CONSULTANTS, INC. (hereinafter "AIRPORT CONSULTANTS") was a foreign business corporation duly authorized to conduct business in the State of New York.

27. At all times mentioned herein, Defendant AIRPORT CONSULTANTS provided

and performed business services that included surveying, design, site inspections, and/or construction in the State of New York.

28. At all times mentioned herein, Defendant AIRPORT CONSULTANTS maintained an office at 100 Arrival Avenue, Suite 208, Ronkonkoma, New York 11779.

29. At all times mentioned herein, Defendant AIRPORT CONSULTANTS maintained an office on the grounds of MacArthur Airport.

30. At all times mentioned herein, Defendant AIRPORT CONSULTANTS was providing professional services at MacArthur Airport including, but not limited to, on-call management services.

31. At all times mentioned herein, Defendant AIRPORT CONSULTANTS was providing professional services at MacArthur Airport including, but not limited to, construction, design, re-design, maintenance, coordination, quality assurance, inspection and/or on-call management services including those services that relate to airfield lighting projects.

32. At all times mentioned herein, Defendant AIRPORT CONSULTANTS was providing professional services at MacArthur Airport as Defendant AIRPORT CONSULTANTS itself described on its web-site at https://adci-corp.com/services/construction-management.

33. At all times mentioned herein, the aforementioned work and/or serviced by Defendant AIRPORT CONSULTANTS included sign G223.

34. At all times mentioned herein, the aforementioned work and/or serviced by Defendant AIRPORT CONSULTANTS included Runway 6/24.

35. At all times mentioned herein, the aforementioned work and/or serviced by Defendant AIRPORT CONSULTANTS included Taxiway Golf.

36. At all times mentioned herein, Defendant BURNS ENGINEERING, INC. (hereinafter "BURNS") was a foreign professional service corporation duly authorized to conduct business in the State of New York.

37. At all times mentioned herein, Defendant BURNS provided and performed business services that included surveying, design, site inspections, and/or construction in the State of New York.

38. At all times mentioned herein, Defendant BURNS performed electrical engineering work including, but not limited to taxiway edge lighting, airfield guidance signs, underground power distribution, airfield vault modifications, airfield lighting control systems modifications and/or glide slope relocation.

39. At all times mentioned herein, Defendant BURNS designed taxiway edge lighting system along, including elevated and in-pavement light fixtures, base cans and conduit and series light circuit distribution.

40. At all times mentioned herein, Defendant BURNS designed elevated runway guard lights for the new runway intersections along the new segments of various taxiways.

41. At all times mentioned herein, Defendant BURNS designed series lighting circuit distribution for taxiways lights and signs, including, but not limited to, homeruns, connections to existing series lighting circuits and new circuits as needed.

42. At all times mentioned herein, Defendant BURNS designed and/or performed modifications and revisions to airfield electrical vault equipment to support airfield revisions, including constant current regulators and low voltage power distribution.

43. At all times mentioned herein, Defendant BURNS designed and/or performed revisions to electrical underground infrastructure, including handhole, conduit and ductbank

systems.

44. At all times mentioned herein, Defendant BURNS designed and/or performed revisions to the airfield lighting control system (ALCS).

45. At all times mentioned herein, Defendant BURNS designed and/or performed revisions to the taxi guidance sign system.

46. At all times mentioned herein, Defendant BURNS designed the power and communication for the relocation of Runway 6 glide slope antenna and shelter, which included, but was not limited to, underground conduit and cabling, revisions to the electrical service, grounding for the shelter and antenna, and technical review with the Federal Aviation Administration (hereinafter "FAA") for the power, communications and grounding.

47. At all times mentioned herein, the aforementioned work included sign G223.

48. At all times mentioned herein, the aforementioned work included Runway 6/24.

49. At all times mentioned herein, the aforementioned work included Taxiway Golf.

50. At all times mentioned herein, Defendant SAVIK & MURRAY, CONSULTING ENGINEERS, PLLC (hereinafter "SAVIK & MURRAY") was a domestic professional service limited liability company duly organized and existing under and by virtue of the laws of the State of New York.

51. At all times mentioned herein, Defendant SAVIK & MURRAY provided and performed business services that included surveying, design, site inspections, and/or construction in the State of New York.

52. At all times mentioned herein, Defendant SAVIK & MURRAY provided consulting services.

53. At all times mentioned herein, Defendant SAVIK & MURRAY provided

consulting services to Defendant AIRPORT CONSULTANTS.

54. At all times mentioned herein, Defendant SAVIK & MURRAY provided consulting services to Defendant JOHNSON, KUKATA, & LUCCHESI, P.C.

55. At all times mentioned herein, Defendant SAVIK & MURRAY served as a "subconsultant" to Defendant AIRPORT CONSULTANTS.

56. At all times mentioned herein, Defendant SAVIK & MURRAY served as a "subconsultant" to Defendant JOHNSON, KUKATA, & LUCCHESI, P.C.

57. At all times mentioned herein, Defendant SAVIK & MURRAY's work included sign G223.

58. At all times mentioned herein, Defendant SAVIK & MURRAY's work included Runway 6/24.

59. At all times mentioned herein, Defendant SAVIK & MURRAY's work included Taxiway Golf.

60. At all times mentioned herein, Defendant SAVIK, MURRAY & AURORA CONSTRUCTION MANAGEMENT CO., LLC (hereinafter "SMA") was a domestic limited liability company duly organized and existing under and by virtue of the laws of the State of New York.

61. At all times mentioned herein, Defendant SMA provided and performed business services that included surveying, design, site inspections, and/or construction in the State of New York.

62. At all times mentioned herein, Defendant SMA provided consulting services.

63. At all times mentioned herein, Defendant SMA provided consulting services to Defendant AIRPORT CONSULTANTS.

64. At all times mentioned herein, Defendant SMA provided consulting services to Defendant JOHNSON, KUKATA, & LUCCHESI, P.C.

65. At all times mentioned herein, Defendant SMA served as a "subconsultant" to Defendant AIRPORT CONSULTANTS.

66. At all times mentioned herein, Defendant SMA served as a "subconsultant" to Defendant JOHNSON, KUKATA, & LUCCHESI, P.C.

67. At all times mentioned herein, Defendant SMA's work included sign G223.

68. At all times mentioned herein, Defendant SMA's work included Runway 6/24.

69. At all times mentioned herein, Defendant SMA's work included Taxiway Golf.

70. At all times mentioned herein, Defendant SAVIK AND MURRAY, LLC (hereinafter "SM") was a domestic limited liability partnership duly organized and existing under and by virtue of the laws of the State of New York.

71. At all times mentioned herein, Defendant SM provided and performed business services that included surveying, design, site inspections, and/or construction in the State of New York.

72. At all times mentioned herein, Defendant SM provided consulting services.

73. At all times mentioned herein, Defendant SM provided consulting services to Defendant AIRPORT CONSULTANTS.

74. At all times mentioned herein, Defendant SM provided consulting services to Defendant JOHNSON, KUKATA, & LUCCHESI, P.C.

75. At all times mentioned herein, Defendant SM served as a "subconsultant" to Defendant AIRPORT CONSULTANTS.

76. At all times mentioned herein, Defendant SM served as a "subconsultant" to

Defendant JOHNSON, KUKATA, & LUCCHESI, P.C.

77.     At all times mentioned herein, Defendant SM's work included sign G223.

78.     At all times mentioned herein, Defendant SM's work included Runway 6/24.

79.     At all times mentioned herein, Defendant SM's work included Taxiway Golf.

80.     At all times mentioned herein, Defendant LONG ISLAND POWER AUTHORITY (hereinafter "LIPA"), was a public authority duly authorized and existing under and by virtue of the laws of the State of New York.

81.     On or about November 2, 2021, Plaintiff caused a Notice of Claim to be served upon Defendant LIPA and said notice was served within ninety (90) days of the occurrence herein.

82.     More than thirty days have elapsed since the presentation of said notice of claim and said claim remains unadjusted and Defendant LIPA has wholly refused, failed and neglected to make any adjustments of same.

83.     No oral examination of Plaintiff was requested and/or held by Defendant LIPA.

84.     The foregoing was completed prior to filing the Summons and Complaint in this action in compliance with New York GML Section 50-E.

85.     This action was commenced within one year and ninety days of the date of the occurrence herein.

86.     Plaintiff has complied with all conditions precedent to the commencement of this action.

87.     At all times mentioned herein, Defendant JOHNSON, KUKATA & LUCCHESI, P.C. (hereinafter "JKL") was a foreign professional service corporation duly authorized to conduct business in the State of New York.

88. At all times mentioned herein, Defendant JKL was conducting business, and provided and performed business services that included surveying, design, site inspections, and/or construction in the State of New York.

89. At all times mentioned herein, Defendant JKL maintained an office on the grounds of MacArthur Airport.

90. At all times mentioned herein, Defendant JKL was providing professional services at MacArthur Airport including, but not limited to, on-call management services.

91. At all times mentioned herein, Defendant JKL was providing professional services at MacArthur Airport including, but not limited to, construction, design, re-design, maintenance, coordination, quality assurance, inspection and/or on-call management services including those services that relate to airfield lighting projects.

92. At all times mentioned herein, Defendant JKL designed and/or determined the location of lights as they pertain to edge lighting system along, including elevated and in-pavement light fixtures, base cans and conduit and series light circuit distribution.

93. At all times mentioned herein, Defendant JKL designed and/or determined the location of lights as their pertain to the taxi guidance systems.

94. At all times mentioned herein, Defendant JKL designed, determined and/or performed siting, modeling and FAA coordination as it pertained to the power and communication with respect to the relocation of Runway 6 glide slope antenna and shelter which involved, but was not limited to, underground conduit and cabling, revisions to the electrical service, grounding for the shelter and antenna, and technical review with the FAA.

95. At all times mentioned herein, the aforementioned work and/or serviced by Defendant JKL included sign G223.

96. At all times mentioned herein, the aforementioned work and/or serviced by Defendant JKL included Runway 6/24.

97. At all times mentioned herein, the aforementioned work and/or serviced by Defendant JKL included Taxiway Golf.

98. On September 8, 2021, Defendant VASHTI DEONARAIN was an employee of the FAA.

99. On September 8, 2021, Defendant VASHTI DEONARAIN was an air traffic controller.

100. On September 8, 2021, Defendant VASHTI DEONARAIN was acting within the scope of her employment with the FAA.

101. On September 8, 2021, Defendant VASHTI DEONARAIN was working at MacArthur airport.

102. On September 8, 2021, Defendant VASHTI DEONARAIN was working in the tower.

103. On September 8, 2021, Defendant VASHTI DEONARAIN had the ability to control and/or regulate the electricity/power supply to sign G223.

104. On September 8, 2021, Defendant VASHTI DEONARAIN had the authority and/or clearance to control and/or regulate the electricity/power supply to sign G223.

105. On September 8, 2021, Defendant VASHTI DEONARAIN did, in fact, control and/or regulate the electricity/power supply to sign G223.

106. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components to MacArthur Airport's electrical grid were owned by Defendant AIRPORT CONSULTANTS.

107. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components to MacArthur Airport's electrical grid were operated by Defendant AIRPORT CONSULTANTS.

108. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components to MacArthur Airport's electrical grid were managed by Defendant AIRPORT CONSULTANTS.

109. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components to MacArthur Airport's electrical grid were inspected by Defendant AIRPORT CONSULTANTS.

110. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were maintained by Defendant AIRPORT CONSULTANTS.

111. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were controlled by Defendant AIRPORT CONSULTANTS.

112. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were repaired by Defendant AIRPORT CONSULTANTS.

113. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were supervised by Defendant AIRPORT CONSULTANTS.

114. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were designed

and/or re-designed by Defendant AIRPORT CONSULTANTS.

115. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were constructed and/or reconstructed by Defendant AIRPORT CONSULTANTS.

116. At all times mentioned herein Defendant AIRPORT CONSULTANTS owned, operated, managed, inspected, maintained, controlled, repaired, supervised, designed, re-designed, constructed and/or reconstructed MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid including those related to sign G223.

117. At all times mentioned herein Defendant AIRPORT CONSULTANTS owned, operated, managed, inspected, maintained, controlled, repaired, supervised, designed, re-designed, constructed and/or reconstructed MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid including those related to Taxiway Golf.

118. At all times mentioned herein Defendant AIRPORT CONSULTANTS owned, operated, managed, inspected, maintained, controlled, repaired, supervised, designed, re-designed, constructed and/or reconstructed MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid including those related to Runway 6/24.

119. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components to MacArthur Airport's electrical grid were owned by Defendant BURNS.

120. At all times mentioned herein, MacArthur Airport's electrical fixtures,

transformers, and/or other components to MacArthur Airport's electrical grid were operated by Defendant BURNS.

121. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components to MacArthur Airport's electrical grid were managed by Defendant BURNS.

122. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components to MacArthur Airport's electrical grid were inspected by Defendant BURNS.

123. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were maintained by Defendant BURNS.

124. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were controlled by Defendant BURNS.

125. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were repaired by Defendant BURNS.

126. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were supervised by Defendant BURNS.

127. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were designed and/or re-designed by Defendant BURNS.

128. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were constructed and/or reconstructed by Defendant BURNS.

129. At all times mentioned herein Defendant BURNS owned, operated, managed, inspected, maintained, controlled, repaired, supervised, designed, re-designed, constructed and/or reconstructed MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid including those related to sign G223.

130. At all times mentioned herein Defendant BURNS owned, operated, managed, inspected, maintained, controlled, repaired, supervised, designed, re-designed, constructed and/or reconstructed MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid including those related to Taxiway Golf.

131. At all times mentioned herein Defendant BURNS owned, operated, managed, inspected, maintained, controlled, repaired, supervised, designed, re-designed, constructed and/or reconstructed MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid including those related to Runway 6/24.

132. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components to MacArthur Airport's electrical grid were owned by Defendant SAVIK & MURRAY.

133. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components to MacArthur Airport's electrical grid were operated by Defendant SAVIK & MURRAY.

134. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components to MacArthur Airport's electrical grid were managed by

Defendant SAVIK & MURRAY.

135.   At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components to MacArthur Airport's electrical grid were inspected by Defendant SAVIK & MURRAY.

136.   At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were maintained by Defendant SAVIK & MURRAY.

137.   At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were controlled by Defendant SAVIK & MURRAY.

138.   At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were repaired by Defendant SAVIK & MURRAY.

139.   At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were supervised by Defendant SAVIK & MURRAY.

140.   At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were designed and/or re-designed by Defendant SAVIK & MURRAY.

141.   At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were constructed and/or reconstructed by Defendant SAVIK & MURRAY.

142.   At all times mentioned herein Defendant SAVIK & MURRAY owned, operated,

managed, inspected, maintained, controlled, repaired, supervised, designed, re-designed, constructed and/or reconstructed MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid including those related to sign G223.

143. At all times mentioned herein Defendant SAVIK & MURRAY owned, operated, managed, inspected, maintained, controlled, repaired, supervised, designed, re-designed, constructed and/or reconstructed MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid including those related to Taxiway Golf.

144. At all times mentioned herein Defendant SAVIK & MURRAY owned, operated, managed, inspected, maintained, controlled, repaired, supervised, designed, re-designed, constructed and/or reconstructed MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid including those related to Runway 6/24.

145. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components to MacArthur Airport's electrical grid were owned by Defendant SMA.

146. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components to MacArthur Airport's electrical grid were operated by Defendant SMA.

147. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components to MacArthur Airport's electrical grid were managed by Defendant SMA.

148. At all times mentioned herein, MacArthur Airport's electrical fixtures,

transformers, and/or other components to MacArthur Airport's electrical grid were inspected by Defendant SMA.

149. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were maintained by Defendant SMA.

150. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were controlled by Defendant SMA.

151. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were repaired by Defendant SMA.

152. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were supervised by Defendant SMA.

153. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were designed and/or re-designed by Defendant SMA.

154. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were constructed and/or reconstructed by Defendant SMA.

155. At all times mentioned herein Defendant SMA owned, operated, managed, inspected, maintained, controlled, repaired, supervised, designed, re-designed, constructed and/or reconstructed MacArthur Airport's electrical fixtures, transformers, and/or other

components of MacArthur Airport's electrical grid including those related to sign G223.

156. At all times mentioned herein Defendant SMA owned, operated, managed, inspected, maintained, controlled, repaired, supervised, designed, re-designed, constructed and/or reconstructed MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid including those related to Taxiway Golf.

157. At all times mentioned herein Defendant SMA owned, operated, managed, inspected, maintained, controlled, repaired, supervised, designed, re-designed, constructed and/or reconstructed MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid including those related to Runway 6/24.

158. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components to MacArthur Airport's electrical grid were owned by Defendant SM.

159. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components to MacArthur Airport's electrical grid were operated by Defendant SM.

160. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components to MacArthur Airport's electrical grid were managed by Defendant SM.

161. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components to MacArthur Airport's electrical grid were inspected by Defendant SM.

162. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were maintained

by Defendant SM.

163. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were controlled by Defendant SM.

164. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were repaired by Defendant SM.

165. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were supervised by Defendant SM.

166. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were designed and/or re-designed by Defendant SM.

167. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were constructed and/or reconstructed by Defendant SM.

168. At all times mentioned herein Defendant SM owned, operated, managed, inspected, maintained, controlled, repaired, supervised, designed, re-designed, constructed and/or reconstructed MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid including those related to sign G223.

169. At all times mentioned herein Defendant SM owned, operated, managed, inspected, maintained, controlled, repaired, supervised, designed, re-designed, constructed and/or reconstructed MacArthur Airport's electrical fixtures, transformers, and/or other

components of MacArthur Airport's electrical grid including those related to Taxiway Golf.

170.    At all times mentioned herein Defendant SM owned, operated, managed, inspected, maintained, controlled, repaired, supervised, designed, re-designed, constructed and/or reconstructed MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid including those related to Runway 6/24.

171.    On September 8, 2021 and prior thereto, MacArthur Airport's electrical supply came from Defendant LIPA.

172.    On September 8, 2021 and prior thereto, Defendant LIPA owned all of the electrical distribution, including, but not limited to the transformers and/or switchgears at MacArthur Airport.

173.    At all times herein mentioned, all of the electrical distribution at MacArthur Airport, including the transformers and/or switchgears were designed and/or re-designed by Defendant LIPA.

174.    On September 8, 2021 and prior thereto, Defendant LIPA designed and/or re-designed all of the electrical distribution, including, but not limited to the transformers and/or switchgears at MacArthur Airport.

175.    At all times herein mentioned, all of the electrical distribution at MacArthur Airport, including the transformers and/or switchgears were constructed and/or reconstructed by Defendant LIPA.

176.    On September 8, 2021 and prior thereto, Defendant LIPA constructed and/or reconstructed all of the electrical distribution, including, but not limited to the transformers and/or switchgears at MacArthur Airport.

177.    On September 8, 2021 and prior thereto, Defendant LIPA reviewed proposals

concerning design and/or re-design of certain electrical distributions, including, but not limited to the transformers and/or switchgears at MacArthur Airport, including, but not limited to those related to Runway 6/24, Taxiway Golf and/or sign G223.

178. On September 8, 2021 and prior thereto, Defendant LIPA approved proposals concerning design and/or re-design of certain electrical distributions, including, but not limited to those related to Runway 6/24.

179. On September 8, 2021 and prior thereto, Defendant LIPA approved proposals concerning design and/or re-design of certain electrical distributions, including, but not limited to those related to Taxiway Golf.

180. On September 8, 2021 and prior thereto, Defendant LIPA approved proposals concerning design and/or re-design of certain electrical distributions, including, but not limited to those related to sign G223.

181. On September 8, 2021 and prior thereto, Defendant LIPA reviewed proposals concerning construction and/or reconstruction of certain electrical distributions, including, but not limited to the transformers and/or switchgears at MacArthur Airport, including, but not limited to those related to Runway 6/24, Taxiway Golf and/or sign G223.

182. On September 8, 2021 and prior thereto, Defendant LIPA approved proposals concerning construction and/or reconstruction of certain electrical distributions, including, but not limited to those related to Runway 6/24.

183. On September 8, 2021 and prior thereto, Defendant LIPA approved proposals concerning construction and/or reconstruction of certain electrical distributions, including, but not limited to those related to Taxiway Golf.

184. On September 8, 2021 and prior thereto, Defendant LIPA reviewed and/or

approved proposals concerning construction and/or reconstruction of certain electrical distributions, including, but not limited to those related to sign G223.

185. On September 8, 2021 and prior thereto, all of the electrical distribution at MacArthur Airport, including, but not limited to the transformers and/or switchgears were maintained by Defendant LIPA.

186. On September 8, 2021 and prior thereto, all of the electrical distribution at MacArthur Airport, including, but not limited to the transformers and/or switchgears were managed by Defendant LIPA.

187. On September 8, 2021 and prior thereto, all of the electrical distribution at MacArthur Airport, including, but not limited to the transformers and/or switchgears were operated by Defendant LIPA.

188. On September 8, 2021 and prior thereto, all of the electrical distribution at MacArthur Airport, including, but not limited to the transformers and/or switchgears were controlled by Defendant LIPA.

189. On September 8, 2021 and prior thereto, all of the electrical distribution at MacArthur Airport, including, but not limited to the transformers and/or switchgears were repaired by Defendant LIPA.

190. On September 8, 2021 and prior thereto, all of the electrical distribution at MacArthur Airport, including, but not limited to the transformers and/or switchgears were supervised by Defendant LIPA.

191. On September 8, 2021 and prior thereto, all of the electrical distribution at MacArthur Airport, including, but not limited to the transformers and/or switchgears were inspected by Defendant LIPA.

192. At all times mentioned herein Defendant LIPA owned, operated, managed, inspected, maintained, controlled, repaired, supervised, designed, re-designed, constructed and/or reconstructed MacArthur Airport's electrical fixtures, transformers, switchgears and/or other components of MacArthur Airport's electrical grid including those related to sign G223.

193. At all times mentioned herein Defendant LIPA owned, operated, managed, inspected, maintained, controlled, repaired, supervised, designed, re-designed, constructed and/or reconstructed MacArthur Airport's electrical fixtures, transformers, switchgears and/or other components of MacArthur Airport's electrical grid including those related to Taxiway Golf.

194. At all times mentioned herein Defendant LIPA owned, operated, managed, inspected, maintained, controlled, repaired, supervised, designed, re-designed, constructed and/or reconstructed MacArthur Airport's electrical fixtures, transformers, switchgears and/or other components of MacArthur Airport's electrical grid including those related to Runway 6/24.

195. At all times mentioned herein Defendant LIPA owned, operated, managed, inspected, maintained, controlled, repaired, supervised, designed, re-designed, constructed and/or reconstructed MacArthur Airport's electrical distribution as it pertains to Taxiway Golf.

196. At all times mentioned herein Defendant LIPA owned, operated, managed, inspected, maintained, controlled, repaired, supervised, designed, re-designed, constructed and/or reconstructed MacArthur Airport's electrical distribution as it pertains to Runway 6/24.

197. At all times mentioned herein Defendant LIPA owned, operated, managed, inspected, maintained, controlled, repaired, supervised, designed, re-designed, constructed and/or reconstructed MacArthur Airport's electrical distribution as it pertains to sign G223.

198.    On September 8, 2021 and prior thereto, Defendant LIPA owned the electrical grid, electrical systems, electrical equipment, and/or runway lights, including said transformers and/or switchgears, in place at MacArthur Airport.

199.    On September 8, 2021 and prior thereto, Defendant LIPA maintained the electrical grid, electrical systems, electrical equipment, and/or runway lights, including said transformers and/or switchgears, in place at MacArthur Airport.

200.    On September 8, 2021 and prior thereto, Defendant LIPA operated the electrical grid, electrical systems, electrical equipment, and/or runway lights, including said transformers and/or switchgears, in place at MacArthur Airport.

201.    On September 8, 2021 and prior thereto, Defendant LIPA controlled the electrical grid, electrical systems, electrical equipment, and/or runway lights, including said transformers and/or switchgears, in place at MacArthur Airport.

202.    On September 8, 2021 and prior thereto, Defendant LIPA inspected the electrical grid, electrical systems, electrical equipment, and/or runway lights, including said transformers and/or switchgears, in place at MacArthur Airport.

203.    On September 8, 2021 and prior thereto, Defendant LIPA supervised the electrical grid, electrical systems, electrical equipment, and/or runway lights, including said transformers and/or switchgears, in place at MacArthur Airport.

204.    On September 8, 2021 and prior thereto, Defendant LIPA repaired the electrical grid, electrical systems, electrical equipment, and/or runway lights, including said transformers and/or switchgears, in place at MacArthur Airport.

205.    On September 8, 2021 and prior thereto, Defendant LIPA managed the electrical grid, electrical systems, electrical equipment, and/or runway lights, including said transformers

FILED: SUFFOLK COUNTY CLERK 02/12/2024 05:12 PM INDEX NO. 205623/2022

NYSCEF DOC. NO. 45 RECEIVED NYSCEF: 02/12/2024

and/or switchgears, in place at MacArthur Airport.

206. Prior to September 8, 2021, Defendant LIPA designed and/or re-designed the electrical grid, electrical systems, electrical equipment, and/or runway lights, including said transformers and/or switchgears, in place at MacArthur Airport.

207. Prior to September 8, 2021, Defendant LIPA constructed and/or reconstructed the electrical grid, electrical systems, electrical equipment, and/or runway lights, including said transformers and/or switchgears, in place at MacArthur Airport.

208. On September 8, 2021 and prior thereto, MacArthur Airport's electrical fixtures, transformers, and/or other components to MacArthur Airport's electrical grid were owned by Defendant LIPA.

209. On September 8, 2021 and prior thereto, MacArthur Airport's electrical fixtures, transformers, and/or other components to MacArthur Airport's electrical grid were operated by Defendant LIPA.

210. On September 8, 2021 and prior thereto, MacArthur Airport's electrical fixtures, transformers, and/or other components to MacArthur Airport's electrical grid were managed by Defendant LIPA.

211. On September 8, 2021 and prior thereto, MacArthur Airport's electrical fixtures, transformers, and/or other components to MacArthur Airport's electrical grid were inspected by Defendant LIPA.

212. On September 8, 2021 and prior thereto, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were maintained by Defendant LIPA.

213. On September 8, 2021 and prior thereto, MacArthur Airport's electrical fixtures,

transformers, and/or other components of MacArthur Airport's electrical grid were controlled by Defendant LIPA.

214. On September 8, 2021 and prior thereto MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were repaired by Defendant LIPA.

215. On September 8, 2021 and prior thereto, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were supervised by Defendant LIPA.

216. On September 8, 2021 and prior thereto, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were designed and/or re-designed by Defendant LIPA.

217. On September 8, 2021 and prior thereto, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were constructed and/or re-constructed by Defendant LIPA.

218. At all times mentioned herein Defendant LIPA owned, operated, managed, inspected, maintained, controlled, repaired, supervised, designed, re-designed, constructed and/or reconstructed the electrical grid, electrical systems, electrical equipment, electrical fixtures and/or runway lights, including said transformers and/or switchgears, in place at MacArthur Airport and specifically those that pertain to Taxiway Golf.

219. At all times mentioned herein Defendant LIPA owned, operated, managed, inspected, maintained, controlled, repaired, supervised, designed, re-designed, constructed and/or reconstructed the electrical grid, electrical systems, electrical equipment, electrical fixtures and/or runway lights, including said transformers and/or switchgears, in place at

MacArthur Airport and specifically those that pertain to Runway 6/24.

220. At all times mentioned herein Defendant LIPA owned, operated, managed, inspected, maintained, controlled, repaired, supervised, designed, re-designed, constructed and/or reconstructed the electrical grid, electrical systems, electrical equipment, electrical fixtures and/or runway lights, including said transformers and/or switchgears, in place at MacArthur Airport and specifically those that pertain to sign G223.

221. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components to MacArthur Airport's electrical grid were owned by Defendant JKL.

222. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components to MacArthur Airport's electrical grid were operated by Defendant JKL.

223. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components to MacArthur Airport's electrical grid were managed by Defendant JKL.

224. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components to MacArthur Airport's electrical grid were inspected by Defendant JKL.

225. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were maintained by Defendant JKL.

226. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were controlled

by Defendant JKL.

227. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were repaired by Defendant JKL.

228. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were supervised by Defendant JKL.

229. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were designed and/or re-designed by Defendant JKL.

230. At all times mentioned herein, MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid were constructed and/or reconstructed by Defendant JKL.

231. At all times mentioned herein Defendant JKL owned, operated, managed, inspected, maintained, controlled, repaired, supervised, designed, re-designed, constructed and/or reconstructed MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid including those related to sign G223.

232. At all times mentioned herein Defendant JKL owned, operated, managed, inspected, maintained, controlled, repaired, supervised, designed, re-designed, constructed and/or reconstructed MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid including those related to Taxiway Golf.

233. At all times mentioned herein Defendant JKL owned, operated, managed, inspected, maintained, controlled, repaired, supervised, designed, re-designed, constructed

and/or reconstructed MacArthur Airport's electrical fixtures, transformers, and/or other components of MacArthur Airport's electrical grid including those related to Runway 6/24.

234.   At all times mentioned herein, and prior to September 8, 2021, Defendant AIRPORT CONSULTANTS constructed Runway 6/24 at MacArthur Airport.

235.   At all times hereinafter mentioned and prior to September 8, 2021, Defendant AIRPORT CONSULTANTS reconstructed Runway 6/24 at MacArthur Airport.

236.   At all times hereinafter mentioned and prior to September 8, 2021, Defendant AIRPORT CONSULTANTS reconstructed Runway 6/24 at MacArthur Airport, including the electrical systems thereat.

237.   At all times mentioned herein, and prior to September 8, 2021, Defendant AIRPORT CONSULTANTS constructed Taxiway Golf at MacArthur Airport.

238.   At all times hereinafter mentioned and prior to September 8, 2021, Defendant AIRPORT CONSULTANTS reconstructed Taxiway Golf at MacArthur Airport.

239.   At all times hereinafter mentioned and prior to September 8, 2021, Defendant AIRPORT CONSULTANTS reconstructed Taxiway Golf at MacArthur Airport, including the electrical systems thereat.

240.   At all times mentioned herein, and prior to September 8, 2021, Defendant AIRPORT CONSULTANTS constructed sign G223 at MacArthur Airport.

241.   At all times hereinafter mentioned and prior to September 8, 2021, Defendant AIRPORT CONSULTANTS reconstructed sign G223 at MacArthur Airport.

242.   At all times hereinafter mentioned and prior to September 8, 2021, Defendant AIRPORT CONSULTANTS reconstructed sign G223 at MacArthur Airport, including the electrical systems thereat.

243.    At all times hereinafter mentioned and prior to September 8, 2021, Defendant BURNS constructed Runway 6/24 at MacArthur Airport.

244.    At all times hereinafter mentioned and prior to September 8, 2021, Defendant BURNS reconstructed Runway 6/24 at MacArthur Airport.

245.    At all times hereinafter mentioned and prior to September 8, 2021, Defendant BURNS reconstructed Runway 6/24 at MacArthur Airport, including the electrical systems thereat.

246.    At all times mentioned herein, and prior to September 8, 2021, Defendant BURNS constructed Taxiway Golf at MacArthur Airport.

247.    At all times hereinafter mentioned and prior to September 8, 2021, Defendant BURNS reconstructed Taxiway Golf at MacArthur Airport.

248.    At all times hereinafter mentioned and prior to September 8, 2021, Defendant BURNS reconstructed Taxiway Golf at MacArthur Airport, including the electrical systems thereat.

249.    At all times mentioned herein, and prior to September 8, 2021, Defendant BURNS constructed sign G223 at MacArthur Airport.

250.    At all times hereinafter mentioned and prior to September 8, 2021, Defendant BURNS reconstructed sign G223 at MacArthur Airport.

251.    At all times hereinafter mentioned and prior to September 8, 2021, Defendant BURNS reconstructed sign G223 at MacArthur Airport, including the electrical systems thereat.

252.    At all times hereinafter mentioned and prior to September 8, 2021, Defendant SAVIK & MURRAY constructed Runway 6/24 at MacArthur Airport.

253.    At all times hereinafter mentioned and prior to September 8, 2021, Defendant

SAVIK & MURRAY reconstructed Runway 6/24 at MacArthur Airport.

254. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SAVIK & MURRAY reconstructed Runway 6/24 at MacArthur Airport, including the electrical systems thereat.

255. At all times mentioned herein, and prior to September 8, 2021, Defendant SAVIK & MURRAY constructed Taxiway Golf at MacArthur Airport.

256. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SAVIK & MURRAY reconstructed Taxiway Golf at MacArthur Airport.

257. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SAVIK & MURRAY reconstructed Taxiway Golf at MacArthur Airport, including the electrical systems thereat.

258. At all times mentioned herein, and prior to September 8, 2021, Defendant SAVIK & MURRAY constructed sign G223 at MacArthur Airport.

259. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SAVIK & MURRAY reconstructed sign G223 at MacArthur Airport.

260. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SAVIK & MURRAY reconstructed sign G223 at MacArthur Airport, including the electrical systems thereat.

261. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SMA constructed Runway 6/24 at MacArthur Airport.

262. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SMA reconstructed Runway 6/24 at MacArthur Airport.

263. At all times hereinafter mentioned and prior to September 8, 2021, Defendant

SMA reconstructed Runway 6/24 at MacArthur Airport, including the electrical systems threat.

264. At all times mentioned herein, and prior to September 8, 2021, Defendant SMA constructed Taxiway Golf at MacArthur Airport.

265. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SMA reconstructed Taxiway Golf at MacArthur Airport.

266. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SMA reconstructed Taxiway Golf at MacArthur Airport, including the electrical systems threat.

267. At all times mentioned herein, and prior to September 8, 2021, Defendant SMA constructed sign G223 at MacArthur Airport.

268. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SMA reconstructed sign G223 at MacArthur Airport.

269. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SMA reconstructed sign G223 at MacArthur Airport, including the electrical systems threat.

270. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SM constructed Runway 6/24 at MacArthur Airport.

271. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SM reconstructed Runway 6/24 at MacArthur Airport.

272. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SM reconstructed Runway 6/24 at MacArthur Airport, including the electrical systems threat.

273. At all times mentioned herein, and prior to September 8, 2021, Defendant SM constructed Taxiway Golf at MacArthur Airport.

274. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SM

reconstructed Taxiway Golf at MacArthur Airport.

275. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SM reconstructed Taxiway Golf at MacArthur Airport, including the electrical systems thereat.

276. At all times mentioned herein, and prior to September 8, 2021, Defendant SM constructed sign G223 at MacArthur Airport.

277. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SM reconstructed sign G223 at MacArthur Airport.

278. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SM reconstructed sign G223 at MacArthur Airport, including the electrical systems thereat.

279. At all times herein mentioned, and prior to September 8, 2021, Defendant LIPA constructed Runway 6/24 at MacArthur Airport.

280. At all times herein mentioned, and prior to September 8, 2021, Defendant LIPA reconstructed Runway 6/24 at MacArthur Airport.

281. At all times hereinafter mentioned and prior to September 8, 2021, Defendant LIPA reconstructed Runway 6/24 at MacArthur Airport, including the electrical systems thereat.

282. At all times mentioned herein, and prior to September 8, 2021, Defendant LIPA constructed Taxiway Golf at MacArthur Airport.

283. At all times hereinafter mentioned and prior to September 8, 2021, Defendant LIPA reconstructed Taxiway Golf at MacArthur Airport.

284. At all times hereinafter mentioned and prior to September 8, 2021, Defendant LIPA reconstructed Taxiway Golf at MacArthur Airport, including the electrical systems thereat.

285.    At all times mentioned herein, and prior to September 8, 2021, Defendant LIPA constructed sign G223 at MacArthur Airport.

286.    At all times hereinafter mentioned and prior to September 8, 2021, Defendant LIPA reconstructed sign G223 at MacArthur Airport.

287.    At all times hereinafter mentioned and prior to September 8, 2021, Defendant LIPA reconstructed sign G223 at MacArthur Airport, including the electrical systems threat.

288.    At all times hereinafter mentioned and prior to September 8, 2021, Defendant JKL constructed Runway 6/24 at MacArthur Airport.

289.    At all times hereinafter mentioned and prior to September 8, 2021, Defendant JKL reconstructed Runway 6/24 at MacArthur Airport.

290.    At all times hereinafter mentioned and prior to September 8, 2021, Defendant JKL reconstructed Runway 6/24 at MacArthur Airport, including the electrical systems threat.

291.    At all times mentioned herein, and prior to September 8, 2021, Defendant JKL constructed Taxiway Golf at MacArthur Airport.

292.    At all times hereinafter mentioned and prior to September 8, 2021, Defendant JKL reconstructed Taxiway Golf at MacArthur Airport.

293.    At all times hereinafter mentioned and prior to September 8, 2021, Defendant JKL reconstructed Taxiway Golf at MacArthur Airport, including the electrical systems threat.

294.    At all times mentioned herein, and prior to September 8, 2021, Defendant JKL constructed sign G223 at MacArthur Airport.

295.    At all times hereinafter mentioned and prior to September 8, 2021, Defendant JKL reconstructed sign G223 at MacArthur Airport.

296.    At all times hereinafter mentioned and prior to September 8, 2021, Defendant

JKL reconstructed sign G223 at MacArthur Airport, including the electrical systems thereat.

297. At all times hereinafter mentioned and prior to September 8, 2021, Defendant AIRPORT CONSULTANTS installed the electrical system(s) for MacArthur Airport's runway(s).

298. At all times hereinafter mentioned and prior to September 8, 2021, Defendant AIRPORT CONSULTANTS installed the electrical system(s) for MacArthur Airport's runway(s) under the direction and management of the Defendant LIPA.

299. At all times hereinafter mentioned and prior to September 8, 2021, Defendant AIRPORT CONSULTANTS installed the electrical system(s) for Macarthur Airport's Runway 6/24.

300. At all times hereinafter mentioned and prior to September 8, 2021, Defendant AIRPORT CONSULTANTS installed the electrical system(s) for MacArthur Airport's Runway 6/24 under the direction and management of the Defendant LIPA.

301. At all times hereinafter mentioned and prior to September 8, 2021, Defendant AIRPORT CONSULTANTS installed the electrical system(s) for MacArthur Airport's taxiway(s) under the direction and management of the Defendant LIPA.

302. At all times hereinafter mentioned and prior to September 8, 2021, Defendant AIRPORT CONSULTANTS installed the electrical system(s) for Macarthur Airport's Taxiway Golf.

303. At all times hereinafter mentioned and prior to September 8, 2021, Defendant AIRPORT CONSULTANTS installed the electrical system(s) for MacArthur Airport's Taxiway Golf under the direction and management of the Defendant LIPA.

304. At all times hereinafter mentioned and prior to September 8, 2021, Defendant

AIRPORT CONSULTANTS installed the electrical system(s) for MacArthur Airport's signs under the direction and management of the Defendant LIPA.

305.  At all times hereinafter mentioned and prior to September 8, 2021, Defendant AIRPORT CONSULTANTS installed the electrical system(s) for Macarthur Airport's sign G223.

306.  At all times hereinafter mentioned and prior to September 8, 2021, Defendant AIRPORT CONSULTANTS installed the electrical system(s) for MacArthur Airport's sign G223 under the direction and management of the Defendant LIPA.

307.  At all times hereinafter mentioned and prior to September 8, 2021, Defendant BURNS installed the electrical system(s) for MacArthur Airport's runway(s).

308.  At all times hereinafter mentioned and prior to September 8, 2021, Defendant BURNS installed the electrical system(s) for MacArthur Airport's runway(s) under the direction and management of the Defendant LIPA.

309.  At all times hereinafter mentioned and prior to September 8, 2021, Defendant BURNS installed the electrical system(s) for Macarthur Airport's Runway 6/24.

310.  At all times hereinafter mentioned and prior to September 8, 2021, Defendant BURNS installed the electrical system(s) for MacArthur Airport's Runway 6/24 under the direction and management of the Defendant LIPA.

311.  At all times hereinafter mentioned and prior to September 8, 2021, Defendant BURNS installed the electrical system(s) for MacArthur Airport's taxiway(s) under the direction and management of the Defendant LIPA.

312.  At all times hereinafter mentioned and prior to September 8, 2021, Defendant BURNS installed the electrical system(s) for Macarthur Airport's Taxiway Golf.

313.   At all times hereinafter mentioned and prior to September 8, 2021, Defendant BURNS installed the electrical system(s) for MacArthur Airport's Taxiway Golf under the direction and management of the Defendant LIPA.

314.   At all times hereinafter mentioned and prior to September 8, 2021, Defendant BURNS installed the electrical system(s) for MacArthur Airport's signs under the direction and management of the Defendant LIPA.

315.   At all times hereinafter mentioned and prior to September 8, 2021, Defendant BURNS installed the electrical system(s) for MacArthur Airport's sign G223.

316.   At all times hereinafter mentioned and prior to September 8, 2021, Defendant BURNS installed the electrical system(s) for MacArthur Airport's sign G223 under the direction and management of the Defendant LIPA.

317.   At all times hereinafter mentioned and prior to September 8, 2021, Defendant SAVIK & MURRAY installed the electrical system(s) for MacArthur Airport's runway(s).

318.   At all times hereinafter mentioned and prior to September 8, 2021, Defendant SAVIK & MURRAY installed the electrical system(s) for MacArthur Airport's runway(s) under the direction and management of the Defendant LIPA.

319.   At all times hereinafter mentioned and prior to September 8, 2021, Defendant SAVIK & MURRAY installed the electrical system(s) for MacArthur Airport's Runway 6/24.

320.   At all times hereinafter mentioned and prior to September 8, 2021, Defendant SAVIK & MURRAY installed the electrical system(s) for MacArthur Airport's Runway 6/24 under the direction and management of the Defendant LIPA.

321.   At all times hereinafter mentioned and prior to September 8, 2021, Defendant SAVIK & MURRAY installed the electrical system(s) for MacArthur Airport's taxiway(s)

under the direction and management of the Defendant LIPA.

322. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SAVIK & MURRAY installed the electrical system(s) for Macarthur Airport's Taxiway Golf.

323. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SAVIK & MURRAY installed the electrical system(s) for MacArthur Airport's Taxiway Golf under the direction and management of the Defendant LIPA.

324. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SAVIK & MURRAY installed the electrical system(s) for MacArthur Airport's signs under the direction and management of the Defendant LIPA.

325. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SAVIK & MURRAY installed the electrical system(s) for MacArthur Airport's sign G223.

326. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SAVIK & MURRAY installed the electrical system(s) for MacArthur Airport's sign G223 under the direction and management of the Defendant LIPA.

327. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SMA installed the electrical system(s) for MacArthur Airport's runway(s).

328. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SMA installed the electrical system(s) for MacArthur Airport's runway(s) under the direction and management of the Defendant LIPA.

329. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SMA installed the electrical system(s) for MacArthur Airport's Runway 6/24.

330. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SMA installed the electrical system(s) for MacArthur Airport's Runway 6/24 under the

direction and management of the Defendant LIPA.

331. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SMA installed the electrical system(s) for MacArthur Airport's taxiway(s) under the direction and management of the Defendant LIPA.

332. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SMA installed the electrical system(s) for Macarthur Airport's Taxiway Golf.

333. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SMA installed the electrical system(s) for MacArthur Airport's Taxiway Golf under the direction and management of the Defendant LIPA.

334. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SMA installed the electrical system(s) for MacArthur Airport's signs under the direction and management of the Defendant LIPA.

335. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SMA installed the electrical system(s) for Macarthur Airport's sign G223.

336. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SMA installed the electrical system(s) for MacArthur Airport's sign G223 under the direction and management of the Defendant LIPA.

337. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SM installed the electrical system(s) for MacArthur Airport's runway(s).

338. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SM installed the electrical system(s) for MacArthur Airport's runway(s) under the direction and management of the Defendant LIPA.

339. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SM

installed the electrical system(s) for MacArthur Airport's Runway 6/24.

340. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SM installed the electrical system(s) for MacArthur Airport's Runway 6/24 under the direction and management of the Defendant LIPA.

341. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SM installed the electrical system(s) for MacArthur Airport's taxiway(s) under the direction and management of the Defendant LIPA.

342. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SM installed the electrical system(s) for Macarthur Airport's Taxiway Golf.

343. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SM installed the electrical system(s) for MacArthur Airport's Taxiway Golf under the direction and management of the Defendant LIPA.

344. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SM installed the electrical system(s) for MacArthur Airport's signs under the direction and management of the Defendant LIPA.

345. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SM installed the electrical system(s) for Macarthur Airport's sign G223.

346. At all times hereinafter mentioned and prior to September 8, 2021, Defendant SM installed the electrical system(s) for MacArthur Airport's sign G223 under the direction and management of the Defendant LIPA.

347. At all times hereinafter mentioned and prior to September 8, 2021, Defendant LIPA installed the electrical system(s) for MacArthur Airport's runway(s).

348. At all times hereinafter mentioned and prior to September 8, 2021, Defendant

LIPA installed the electrical system(s) for MacArthur Airport's Runway 6/24.

349. At all times hereinafter mentioned and prior to September 8, 2021, Defendant LIPA installed the electrical system(s) for MacArthur Airport's taxiway(s).

350. At all times hereinafter mentioned and prior to September 8, 2021, Defendant LIPA installed the electrical system(s) for Macarthur Airport's Taxiway Golf.

351. At all times hereinafter mentioned and prior to September 8, 2021, Defendant LIPA installed the electrical system(s) for MacArthur Airport's signs.

352. At all times hereinafter mentioned and prior to September 8, 2021, Defendant LIPA installed the electrical system(s) for Macarthur Airport's sign G223.

353. At all times hereinafter mentioned and prior to September 8, 2021, Defendant JKL installed the electrical system(s) for MacArthur Airport's runway(s).

354. At all times hereinafter mentioned and prior to September 8, 2021, Defendant JKL installed the electrical system(s) for MacArthur Airport's runway(s) under the direction and management of the Defendant LIPA.

355. At all times hereinafter mentioned and prior to September 8, 2021, Defendant JKL installed the electrical system(s) for Macarthur Airport's Runway 6/24.

356. At all times hereinafter mentioned and prior to September 8, 2021, Defendant JKL installed the electrical system(s) for MacArthur Airport's Runway 6/24 under the direction and management of the Defendant LIPA.

357. At all times hereinafter mentioned and prior to September 8, 2021, Defendant JKL installed the electrical system(s) for MacArthur Airport's taxiway(s) under the direction and management of the Defendant LIPA.

358. At all times hereinafter mentioned and prior to September 8, 2021, Defendant

JKL installed the electrical system(s) for Macarthur Airport's Taxiway Golf.

359. At all times hereinafter mentioned and prior to September 8, 2021, Defendant JKL installed the electrical system(s) for MacArthur Airport's Taxiway Golf under the direction and management of the Defendant LIPA.

360. At all times hereinafter mentioned and prior to September 8, 2021, Defendant JKL installed the electrical system(s) for MacArthur Airport's signs under the direction and management of the Defendant LIPA.

361. At all times hereinafter mentioned and prior to September 8, 2021, Defendant JKL installed the electrical system(s) for Macarthur Airport's sign G223.

362. At all times hereinafter mentioned and prior to September 8, 2021, Defendant JKL installed the electrical system(s) for MacArthur Airport's sign G223 under the direction and management of the Defendant LIPA.

363. At all times mentioned herein, Defendant AIRPORT CONSULTANTS contracted with Defendant LIPA to perform said work.

364. At all times mentioned herein, Defendant BURNS contracted with Defendant LIPA to perform said work.

365. At all times mentioned herein, Defendant SAVIK & MURRAY contracted with Defendant LIPA to perform said work.

366. At all times mentioned herein, Defendant SMA contracted with Defendant LIPA to perform said work.

367. At all times mentioned herein, Defendant SM contracted with Defendant LIPA to perform said work.

368. At all times mentioned herein, Defendant JKL contracted with Defendant LIPA to

perform said work.

369. At all times mentioned herein, Defendant AIRPORT CONSULTANTS entered into a contract to become involved in the reconstruction, construction, and/or installment of MacArthur Airport's electrical grid that was in place and being used on September 8, 2021.

370. At all times mentioned herein, Defendant BURNS entered into a contract to become involved in the reconstruction, construction, and/or installment of MacArthur Airport's electrical grid that was in place and being used on September 8, 2021.

371. At all times mentioned herein, Defendant SAVIK & MURRAY entered into a contract to become involved in the reconstruction, construction, and/or installment of MacArthur Airport's electrical grid that was in place and being used on September 8, 2021.

372. At all times mentioned herein, Defendant SMA entered into a contract to become involved in the reconstruction, construction, and/or installment of MacArthur Airport's electrical grid that was in place and being used on September 8, 2021.

373. At all times mentioned herein, Defendant SM entered into a contract to become involved in the reconstruction, construction, and/or installment of MacArthur Airport's electrical grid that was in place and being used on September 8, 2021.

374. At all times mentioned herein, Defendant JKL entered into a contract to become involved in the reconstruction, construction, and/or installment of MacArthur Airport's electrical grid that was in place and being used on September 8, 2021.

375. At all times mentioned herein, Defendant AIRPORT CONSULTANTS oversaw and/or supervised the development, construction, repairs, installation, maintenance, and/or inspections of MacArthur Airport's electrical grid and/or systems connected and/or related thereto.

376. At all times mentioned herein, Defendant BURNS oversaw and/or supervised the development, construction, repairs, installation, maintenance, and/or inspections of MacArthur Airport's electrical grid and/or systems connected and/or related thereto.

377. At all times mentioned herein, Defendant SAVIK & MURRAY oversaw and/or supervised the development, construction, repairs, installation, maintenance, and/or inspections of MacArthur Airport's electrical grid and/or systems connected and/or related thereto.

378. At all times mentioned herein, Defendant SMA oversaw and/or supervised the development, construction, repairs, installation, maintenance, and/or inspections of MacArthur Airport's electrical grid and/or systems connected and/or related thereto.

379. At all times mentioned herein, Defendant SM oversaw and/or supervised the development, construction, repairs, installation, maintenance, and/or inspections of MacArthur Airport's electrical grid and/or systems connected and/or related thereto.

380. At all times mentioned herein, Defendant JKL oversaw and/or supervised the development, construction, repairs, installation, maintenance, and/or inspections of MacArthur Airport's electrical grid and/or systems connected and/or related thereto.

381. At all times mentioned herein, Defendant AIRPORT CONSULTANTS entered into an agreement with Defendant LIPA to perform certain work and/or other services at MacArthur Airport.

382. At all times mentioned herein, Defendant AIRPORT CONSULTANTS entered into an agreement with the TOWN OF ISLIP to perform certain work and/or other services at MacArthur Airport.

383. At all times mentioned herein, Defendant AIRPORT CONSULTANTS entered into an agreement with Defendant JKL to perform certain work and/or other services at

MacArthur Airport.

384.    At all times mentioned herein, Defendant AIRPORT CONSULTANTS entered into an agreement with Defendant LIPA to perform certain engineering and/or consulting services at MacArthur Airport.

385.    At all times mentioned herein, Defendant AIRPORT CONSULTANTS entered into an agreement with the TOWN OF ISLIP to perform certain engineering and/or consulting services at MacArthur Airport.

386.    At all times mentioned herein, Defendant AIRPORT CONSULTANTS entered into an agreement with Defendant JKL to perform certain engineering and/or consulting services at MacArthur Airport.

387.    At all times mentioned herein, Plaintiff, relied on Defendant AIRPORT CONSULTANTS' performance of its contractual duties pursuant to the aforesaid contract, to his detriment.

388.    At all times mentioned herein, pursuant to the aforesaid contract, Defendant AIRPORT CONSULTANTS entirely displaced Defendant LIPA's duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain the aforesaid Runway 6/24 and/or parts thereof in a safe condition.

389.    At all times mentioned herein, pursuant to the aforesaid contract, Defendant AIRPORT CONSULTANTS entirely displaced the TOWN OF ISLIP's duty to construct, repair, inspect and/or maintain the aforesaid Runway 6/24 and/or parts thereof in a safe condition.

390.    At all times mentioned herein, pursuant to the aforesaid contract, Defendant AIRPORT CONSULTANTS entirely displaced Defendant JKL's duty to construct, repair,

inspect and/or maintain the aforesaid Runway 6/24 and/or parts thereof in a safe condition.

391. At all times mentioned herein, pursuant to the aforesaid contract, Defendant AIRPORT CONSULTANTS entirely displaced Defendant LIPA's duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain Taxiway Golf and/or parts thereof in a safe condition.

392. At all times mentioned herein, pursuant to the aforesaid contract, Defendant AIRPORT CONSULTANTS entirely displaced the TOWN OF ISLIP's duty to construct, repair, inspect and/or maintain Taxiway Golf and/or parts thereof in a safe condition.

393. At all times mentioned herein, pursuant to the aforesaid contract, Defendant AIRPORT CONSULTANTS entirely displaced Defendant JKL's duty to construct, repair, inspect and/or maintain Taxiway Golf and/or parts thereof in a safe condition.

394. At all times mentioned herein, pursuant to the aforesaid contract, Defendant AIRPORT CONSULTANTS entirely displaced Defendant LIPA's duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain the aforesaid sign G223 and/or parts thereof in a safe condition.

395. At all times mentioned herein, pursuant to the aforesaid contract, Defendant AIRPORT CONSULTANTS entirely displaced the TOWN OF ISLIP's duty to construct, repair, inspect and/or maintain the aforesaid sign G223 and/or parts thereof in a safe condition.

396. At all times mentioned herein, pursuant to the aforesaid contract, Defendant AIRPORT CONSULTANTS entirely displaced Defendant JKL's duty to construct, repair, inspect and/or maintain the aforesaid sign G223 and/or parts thereof in a safe condition.

397. As a result of the aforesaid negligence, carelessness and recklessness of Defendant AIRPORT CONSULTANTS, said Defendant launched a force and/or instrument of

harm causing Plaintiff serious personal injuries.

398. At all times mentioned herein, Defendant BURNS entered into an agreement with Defendant LIPA to perform certain work and/or other services at MacArthur Airport.

399. At all times mentioned herein, Defendant BURNS entered into an agreement with the TOWN OF ISLIP to perform certain work and/or other services at MacArthur Airport.

400. At all times mentioned herein, Defendant BURNS entered into an agreement with Defendant LIPA to perform certain services at MacArthur Airport.

401. At all times mentioned herein, Defendant BURNS entered into an agreement with the TOWN OF ISLIP to perform certain services at MacArthur Airport.

402. At all times mentioned herein, Defendant BURNS entered into an agreement with Defendant AIRPORT CONSULTANTS to perform certain services at MacArthur Airport.

403. At all times mentioned herein, Defendant BURNS entered into an agreement with Defendant SAVIK & MURRAY to perform certain services at MacArthur Airport.

404. At all times mentioned herein, Defendant BURNS entered into an agreement with Defendant SMA to perform certain services at MacArthur Airport.

405. At all times mentioned herein, Defendant BURNS entered into an agreement with Defendant SM to perform certain services at MacArthur Airport.

406. At all times mentioned herein, Defendant BURNS entered into an agreement with Defendant JKL to perform certain services at MacArthur Airport.

407. At all times mentioned herein, Plaintiff, relied on Defendant BURNS' performance of its contractual duties pursuant to the aforesaid contract, to his detriment.

408. At all times mentioned herein, pursuant to the aforesaid contract, Defendant BURNS entirely displaced Defendant LIPA's, duty to construct, repair, manage, operate,

control, supervise, inspect and/or maintain the aforesaid Runway 6/24 and/or parts thereof in a safe condition.

409. At all times mentioned herein, pursuant to the aforesaid contract, Defendant BURNS entirely displaced the TOWN OF ISLIP's, duty to construct, repair, inspect and/or maintain the aforesaid Runway 6/24 and/or parts thereof in a safe condition.

410. At all times mentioned herein, pursuant to the aforesaid contract, Defendant BURNS entirely displaced Defendant AIRPORT CONSULTANTS', duty to construct, repair, inspect and/or maintain the aforesaid Runway 6/24 and/or parts thereof in a safe condition.

411. At all times mentioned herein, pursuant to the aforesaid contract, Defendant BURNS entirely displaced Defendant SAVIK & MURRAY's, duty to construct, repair, inspect and/or maintain the aforesaid Runway 6/24 and/or parts thereof in a safe condition.

412. At all times mentioned herein, pursuant to the aforesaid contract, Defendant BURNS entirely displaced Defendant SMA's, duty to construct, repair, inspect and/or maintain the aforesaid Runway 6/24 and/or parts thereof in a safe condition.

413. At all times mentioned herein, pursuant to the aforesaid contract, Defendant BURNS entirely displaced Defendant SM's, duty to construct, repair, inspect and/or maintain the aforesaid Runway 6/24 and/or parts thereof in a safe condition.

414. At all times mentioned herein, pursuant to the aforesaid contract, Defendant BURNS entirely displaced Defendant JKL's, duty to construct, repair, inspect and/or maintain the aforesaid Runway 6/24 and/or parts thereof in a safe condition.

415. At all times mentioned herein, pursuant to the aforesaid contract, Defendant BURNS entirely displaced Defendant LIPA's, duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain Taxiway Golf and/or parts thereof in a safe

condition.

416. At all times mentioned herein, pursuant to the aforesaid contract, Defendant BURNS entirely displaced the TOWN OF ISLIP's, duty to construct, repair, inspect and/or maintain Taxiway Golf and/or parts thereof in a safe condition.

417. At all times mentioned herein, pursuant to the aforesaid contract, Defendant BURNS entirely displaced Defendant AIRPORT CONSULTANTS' duty to construct, repair, inspect and/or maintain Taxiway Golf and/or parts thereof in a safe condition.

418. At all times mentioned herein, pursuant to the aforesaid contract, Defendant BURNS entirely displaced Defendant SAVIK & MURRAY's, duty to construct, repair, inspect and/or maintain Taxiway Golf and/or parts thereof in a safe condition.

419. At all times mentioned herein, pursuant to the aforesaid contract, Defendant BURNS entirely displaced Defendant SMA's duty to construct, repair, inspect and/or maintain Taxiway Golf and/or parts thereof in a safe condition.

420. At all times mentioned herein, pursuant to the aforesaid contract, Defendant BURNS entirely displaced Defendant SM's duty to construct, repair, inspect and/or maintain Taxiway Golf and/or parts thereof in a safe condition.

421. At all times mentioned herein, pursuant to the aforesaid contract, Defendant BURNS entirely displaced Defendant JKL's duty to construct, repair, inspect and/or maintain Taxiway Golf and/or parts thereof in a safe condition.

422. At all times mentioned herein, pursuant to the aforesaid contract, Defendant BURNS entirely displaced Defendant LIPA's, duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain the aforesaid sign G223 and/or parts thereof in a safe condition.

423.    At all times mentioned herein, pursuant to the aforesaid contract, Defendant BURNS entirely displaced the TOWN OF ISLIP's, duty to construct, repair, inspect and/or maintain the aforesaid sign G223 and/or parts thereof in a safe condition.

424.    At all times mentioned herein, pursuant to the aforesaid contract, Defendant BURNS entirely displaced Defendant AIRPORT CONSULTANTS' duty to construct, repair, inspect and/or maintain the aforesaid sign G223 and/or parts thereof in a safe condition.

425.    At all times mentioned herein, pursuant to the aforesaid contract, Defendant BURNS entirely displaced Defendant SAVIK & MURRAY's, duty to construct, repair, inspect and/or maintain the aforesaid sign G223 and/or parts thereof in a safe condition.

426.    At all times mentioned herein, pursuant to the aforesaid contract, Defendant BURNS entirely displaced Defendant SMA's duty to construct, repair, inspect and/or maintain the aforesaid sign G223 and/or parts thereof in a safe condition.

427.    At all times mentioned herein, pursuant to the aforesaid contract, Defendant BURNS entirely displaced Defendant SM's duty to construct, repair, inspect and/or maintain the aforesaid sign G223 and/or parts thereof in a safe condition.

428.    At all times mentioned herein, pursuant to the aforesaid contract, Defendant BURNS entirely displaced Defendant JKL's duty to construct, repair, inspect and/or maintain the aforesaid sign G223 and/or parts thereof in a safe condition.

429.    As a result of the aforesaid negligence, carelessness and recklessness of Defendant BURNS, said Defendant launched a force and/or instrument of harm causing Plaintiff serious personal injuries.

430.    At all times mentioned herein, Defendant SAVIK & MURRAY entered into an agreement with Defendant LIPA to perform certain work and/or other services at MacArthur

Airport.

431.    At all times mentioned herein, Defendant SAVIK & MURRAY entered into an agreement with the TOWN OF ISLIP to perform certain work and/or other services at MacArthur Airport.

432.    At all times mentioned herein, Defendant SAVIK & MURRAY entered into an agreement with Defendant LIPA to perform certain engineering and/or consulting services at MacArthur Airport.

433.    At all times mentioned herein, Defendant SAVIK & MURRAY entered into an agreement with the TOWN OF ISLIP to perform certain engineering and/or consulting services at MacArthur Airport.

434.    At all times mentioned herein, Defendant SAVIK & MURRAY entered into an agreement with Defendant AIRPORT CONSULTANTS to perform certain engineering and/or consulting services at MacArthur Airport.

435.    At all times mentioned herein, Defendant SAVIK & MURRAY entered into an agreement with Defendant BURNS to perform certain engineering and/or consulting services at MacArthur Airport.

436.    At all times mentioned herein, Defendant SAVIK & MURRAY entered into an agreement with Defendant JKL to perform certain engineering and/or consulting services at MacArthur Airport.

437.    At all times mentioned herein, Plaintiff, relied on Defendant SAVIK & MURRAY's performance of its contractual duties pursuant to the aforesaid contract, to his detriment.

438.    At all times mentioned herein, pursuant to the aforesaid contract, Defendant

SAVIK & MURRAY entirely displaced Defendant LIPA's, duty to construct, repair, inspect and/or maintain the aforesaid Runway 6/24 and/or parts thereof in a safe condition.

439. At all times mentioned herein, pursuant to the aforesaid contract, Defendant SAVIK & MURRAY entirely displaced the TOWN OF ISLIP's, duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain the aforesaid Runway 6/24 and/or parts thereof in a safe condition.

440. At all times mentioned herein, pursuant to the aforesaid contract, Defendant SAVIK & MURRAY entirely displaced Defendant AIRPORT CONSULTANTS' duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain the aforesaid Runway 6/24 and/or parts thereof in a safe condition.

441. At all times mentioned herein, pursuant to the aforesaid contract, Defendant SAVIK & MURRAY entirely displaced Defendant BURNS' duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain the aforesaid Runway 6/24 and/or parts thereof in a safe condition.

442. At all times mentioned herein, pursuant to the aforesaid contract, Defendant SAVIK & MURRAY entirely displaced Defendant JKL's duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain the aforesaid Runway 6/24 and/or parts thereof in a safe condition.

443. At all times mentioned herein, pursuant to the aforesaid contract, Defendant SAVIK & MURRAY entirely displaced Defendant LIPA's, duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain Taxiway Golf and/or parts thereof in a safe condition.

444. At all times mentioned herein, pursuant to the aforesaid contract, Defendant

SAVIK & MURRAY entirely displaced the TOWN OF ISLIP's, duty to construct, repair, inspect and/or maintain Taxiway Golf and/or parts thereof in a safe condition.

445.    At all times mentioned herein, pursuant to the aforesaid contract, Defendant SAVIK & MURRAY entirely displaced Defendant AIRPORT CONSULTANTS' duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain Taxiway Golf and/or parts thereof in a safe condition.

446.    At all times mentioned herein, pursuant to the aforesaid contract, Defendant SAVIK & MURRAY entirely displaced Defendant BURNS' duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain Taxiway Golf and/or parts thereof in a safe condition.

447.    At all times mentioned herein, pursuant to the aforesaid contract, Defendant SAVIK & MURRAY entirely displaced Defendant JKL's duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain Taxiway Golf and/or parts thereof in a safe condition.

448.    At all times mentioned herein, pursuant to the aforesaid contract, Defendant SAVIK & MURRAY entirely displaced Defendant LIPA's, duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain the aforesaid sign G223 and/or parts thereof in a safe condition.

449.    At all times mentioned herein, pursuant to the aforesaid contract, Defendant SAVIK & MURRAY entirely displaced the TOWN OF ISLIP's, duty to construct, repair, inspect and/or maintain the aforesaid sign G223 and/or parts thereof in a safe condition.

450.    At all times mentioned herein, pursuant to the aforesaid contract, Defendant SAVIK & MURRAY entirely displaced Defendant AIRPORT CONSULTANTS' duty to

construct, repair, manage, operate, control, supervise, inspect and/or maintain the aforesaid sign G223 and/or parts thereof in a safe condition.

451. At all times mentioned herein, pursuant to the aforesaid contract, Defendant SAVIK & MURRAY entirely displaced Defendant BURNS' duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain the aforesaid sign G223 and/or parts thereof in a safe condition.

452. At all times mentioned herein, pursuant to the aforesaid contract, Defendant SAVIK & MURRAY entirely displaced Defendant JKL's duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain the aforesaid sign G223 and/or parts thereof in a safe condition.

453. As a result of the aforesaid negligence, carelessness and recklessness of Defendant SAVIK & MURRAY, said Defendant launched a force and/or instrument of harm causing Plaintiff serious personal injuries.

454. At all times mentioned herein, Defendant SMA entered into an agreement with Defendant LIPA to perform certain work and/or other services at MacArthur Airport.

455. At all times mentioned herein, Defendant SMA entered into an agreement with the TOWN OF ISLIP to perform certain work and/or other services at MacArthur Airport.

456. At all times mentioned herein, Defendant SMA entered into an agreement with Defendant LIPA to perform certain engineering and/or consulting services at MacArthur Airport.

457. At all times mentioned herein, Defendant SMA entered into an agreement with the TOWN OF ISLIP to perform certain engineering and/or consulting services at MacArthur Airport.

458. At all times mentioned herein, Defendant SMA entered into an agreement with Defendant AIRPORT CONSULTANTS to perform certain engineering and/or consulting services at MacArthur Airport.

459. At all times mentioned herein, Defendant SMA entered into an agreement with Defendant BURNS to perform certain engineering and/or consulting services at MacArthur Airport.

460. At all times mentioned herein, Defendant SMA entered into an agreement with Defendant JKL to perform certain engineering and/or consulting services at MacArthur Airport.

461. At all times mentioned herein, Plaintiff, relied on Defendant SMA's performance of its contractual duties pursuant to the aforesaid contract, to his detriment.

462. At all times mentioned herein, pursuant to the aforesaid contract, Defendant SMA entirely displaced Defendant LIPA's, duty to construct, repair, inspect and/or maintain the aforesaid Runway 6/24 and/or parts thereof in a safe condition.

463. At all times mentioned herein, pursuant to the aforesaid contract, Defendant SMA entirely displaced the TOWN OF ISLIP's, duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain the aforesaid Runway 6/24 and/or parts thereof in a safe condition.

464. At all times mentioned herein, pursuant to the aforesaid contract, Defendant SMA entirely displaced Defendant AIRPORT CONSULTANTS' duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain the aforesaid Runway 6/24 and/or parts thereof in a safe condition.

465. At all times mentioned herein, pursuant to the aforesaid contract, Defendant SMA entirely displaced Defendant BURNS' duty to construct, repair, manage, operate, control,

supervise, inspect and/or maintain the aforesaid Runway 6/24 and/or parts thereof in a safe condition.

466.    At all times mentioned herein, pursuant to the aforesaid contract, Defendant SMA entirely displaced Defendant JKL's duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain the aforesaid Runway 6/24 and/or parts thereof in a safe condition.

467.    At all times mentioned herein, pursuant to the aforesaid contract, Defendant SMA entirely displaced Defendant LIPA's, duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain Taxiway Golf and/or parts thereof in a safe condition.

468.    At all times mentioned herein, pursuant to the aforesaid contract, Defendant SMA entirely displaced the TOWN OF ISLIP's, duty to construct, repair, inspect and/or maintain Taxiway Golf and/or parts thereof in a safe condition.

469.    At all times mentioned herein, pursuant to the aforesaid contract, Defendant SMA entirely displaced Defendant AIRPORT CONSULTANTS' duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain Taxiway Golf and/or parts thereof in a safe condition.

470.    At all times mentioned herein, pursuant to the aforesaid contract, Defendant SMA entirely displaced Defendant BURNS' duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain Taxiway Golf and/or parts thereof in a safe condition.

471.    At all times mentioned herein, pursuant to the aforesaid contract, Defendant SMA entirely displaced Defendant JKL's duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain Taxiway Golf and/or parts thereof in a safe condition.

472.    At all times mentioned herein, pursuant to the aforesaid contract, Defendant SMA

entirely displaced Defendant LIPA's, duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain the aforesaid sign G223 and/or parts thereof in a safe condition.

473. At all times mentioned herein, pursuant to the aforesaid contract, Defendant SMA entirely displaced the TOWN OF ISLIP's, duty to construct, repair, inspect and/or maintain the aforesaid sign G223 and/or parts thereof in a safe condition.

474. At all times mentioned herein, pursuant to the aforesaid contract, Defendant SMA entirely displaced Defendant AIRPORT CONSULTANTS' duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain the aforesaid sign G223 and/or parts thereof in a safe condition.

475. At all times mentioned herein, pursuant to the aforesaid contract, Defendant SMA entirely displaced Defendant BURNS' duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain the aforesaid sign G223 and/or parts thereof in a safe condition.

476. At all times mentioned herein, pursuant to the aforesaid contract, Defendant SMA entirely displaced Defendant JKL's duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain the aforesaid sign G223 and/or parts thereof in a safe condition.

477. As a result of the aforesaid negligence, carelessness and recklessness of Defendant SMA, said Defendant launched a force and/or instrument of harm causing Plaintiff serious personal injuries.

478. At all times mentioned herein, Defendant SM entered into an agreement with Defendant LIPA to perform certain work and/or other services at MacArthur Airport.

479. At all times mentioned herein, Defendant SM entered into an agreement with the TOWN OF ISLIP to perform certain work and/or other services at MacArthur Airport.

480. At all times mentioned herein, Defendant SM entered into an agreement with Defendant LIPA to perform certain engineering and/or consulting services at MacArthur Airport.

481. At all times mentioned herein, Defendant SM entered into an agreement with the TOWN OF ISLIP to perform certain engineering and/or consulting services at MacArthur Airport.

482. At all times mentioned herein, Defendant SM entered into an agreement with Defendant AIRPORT CONSULTANTS to perform certain engineering and/or consulting services at MacArthur Airport.

483. At all times mentioned herein, Defendant SM entered into an agreement with Defendant BURNS to perform certain engineering and/or consulting services at MacArthur Airport.

484. At all times mentioned herein, Defendant SM entered into an agreement with Defendant JKL to perform certain engineering and/or consulting services at MacArthur Airport.

485. At all times mentioned herein, Plaintiff, relied on Defendant SM's performance of its contractual duties pursuant to the aforesaid contract, to his detriment.

486. At all times mentioned herein, pursuant to the aforesaid contract, Defendant SM entirely displaced Defendant LIPA's, duty to construct, repair, inspect and/or maintain the aforesaid Runway 6/24 and/or parts thereof in a safe condition.

487. At all times mentioned herein, pursuant to the aforesaid contract, Defendant SM entirely displaced the TOWN OF ISLIP's, duty to construct, repair, manage, operate, control,

supervise, inspect and/or maintain the aforesaid Runway 6/24 and/or parts thereof in a safe condition.

488.    At all times mentioned herein, pursuant to the aforesaid contract, Defendant SM entirely displaced Defendant AIRPORT CONSULTANTS' duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain the aforesaid Runway 6/24 and/or parts thereof in a safe condition.

489.    At all times mentioned herein, pursuant to the aforesaid contract, Defendant SM entirely displaced Defendant BURNS' duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain the aforesaid Runway 6/24 and/or parts thereof in a safe condition.

490.    At all times mentioned herein, pursuant to the aforesaid contract, Defendant SM entirely displaced Defendant JKL's duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain the aforesaid Runway 6/24 and/or parts thereof in a safe condition.

491.    At all times mentioned herein, pursuant to the aforesaid contract, Defendant SM entirely displaced Defendant LIPA's, duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain Taxiway Golf and/or parts thereof in a safe condition.

492.    At all times mentioned herein, pursuant to the aforesaid contract, Defendant SM entirely displaced the TOWN OF ISLIP's, duty to construct, repair, inspect and/or maintain Taxiway Golf and/or parts thereof in a safe condition.

493.    At all times mentioned herein, pursuant to the aforesaid contract, Defendant SM entirely displaced Defendant AIRPORT CONSULTANTS' duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain Taxiway Golf and/or parts thereof in a safe

condition.

494. At all times mentioned herein, pursuant to the aforesaid contract, Defendant SM entirely displaced Defendant BURNS' duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain Taxiway Golf and/or parts thereof in a safe condition.

495. At all times mentioned herein, pursuant to the aforesaid contract, Defendant SM entirely displaced Defendant JKL's duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain Taxiway Golf and/or parts thereof in a safe condition.

496. At all times mentioned herein, pursuant to the aforesaid contract, Defendant SM entirely displaced Defendant LIPA's, duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain the aforesaid sign G223 and/or parts thereof in a safe condition.

497. At all times mentioned herein, pursuant to the aforesaid contract, Defendant SM entirely displaced the TOWN OF ISLIP's, duty to construct, repair, inspect and/or maintain the aforesaid sign G223 and/or parts thereof in a safe condition.

498. At all times mentioned herein, pursuant to the aforesaid contract, Defendant SM entirely displaced Defendant AIRPORT CONSULTANTS' duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain the aforesaid sign G223 and/or parts thereof in a safe condition.

499. At all times mentioned herein, pursuant to the aforesaid contract, Defendant SM entirely displaced Defendant BURNS' duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain the aforesaid sign G223 and/or parts thereof in a safe condition.

500. At all times mentioned herein, pursuant to the aforesaid contract, Defendant SM

entirely displaced Defendant JKL's duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain the aforesaid sign G223 and/or parts thereof in a safe condition.

501. As a result of the aforesaid negligence, carelessness and recklessness of Defendant SM, said Defendant launched a force and/or instrument of harm causing Plaintiff serious personal injuries.

502. At all times mentioned herein, Defendant JKL entered into an agreement with Defendant LIPA to perform certain work and/or other services at MacArthur Airport.

503. At all times mentioned herein, Defendant JKL entered into an agreement with the TOWN OF ISLIP to perform certain work and/or other services at MacArthur Airport.

504. At all times mentioned herein, Defendant JKL entered into an agreement with Defendant AIRPORT CONSULTANTS to perform certain work and/or other services at MacArthur Airport.

505. At all times mentioned herein, Defendant JKL entered into an agreement with Defendant LIPA to perform certain engineering and/or consulting services at MacArthur Airport.

506. At all times mentioned herein, Defendant JKL entered into an agreement with the TOWN OF ISLIP to perform certain engineering and/or consulting services at MacArthur Airport.

507. At all times mentioned herein, Defendant JKL entered into an agreement with Defendant AIRPORT CONSULTANTS to perform certain engineering and/or consulting services at MacArthur Airport.

508. At all times mentioned herein, Plaintiff, relied on Defendant JKL's performance

of its contractual duties pursuant to the aforesaid contract, to his detriment.

509. At all times mentioned herein, pursuant to the aforesaid contract, Defendant JKL entirely displaced Defendant LIPA's duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain the aforesaid Runway 6/24 and/or parts thereof in a safe condition.

510. At all times mentioned herein, pursuant to the aforesaid contract, Defendant JKL entirely displaced the TOWN OF ISLIP's duty to construct, repair, inspect and/or maintain the aforesaid Runway 6/24 and/or parts thereof in a safe condition.

511. At all times mentioned herein, pursuant to the aforesaid contract, Defendant JKL entirely displaced Defendant AIRPORT CONSULTANTS' duty to construct, repair, inspect and/or maintain the aforesaid Runway 6/24 and/or parts thereof in a safe condition.

512. At all times mentioned herein, pursuant to the aforesaid contract, Defendant JKL entirely displaced Defendant LIPA's, duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain Taxiway Golf and/or parts thereof in a safe condition.

513. At all times mentioned herein, pursuant to the aforesaid contract, Defendant JKL entirely displaced the TOWN OF ISLIP's, duty to construct, repair, inspect and/or maintain Taxiway Golf and/or parts thereof in a safe condition.

514. At all times mentioned herein, pursuant to the aforesaid contract, Defendant JKL entirely displaced Defendant AIRPORT CONSULTANTS' duty to construct, repair, inspect and/or maintain Taxiway Golf and/or parts thereof in a safe condition.

515. At all times mentioned herein, pursuant to the aforesaid contract, Defendant JKL entirely displaced Defendant LIPA's, duty to construct, repair, manage, operate, control, supervise, inspect and/or maintain the aforesaid sign G223 and/or parts thereof in a safe

condition.

516. At all times mentioned herein, pursuant to the aforesaid contract, Defendant JKL entirely displaced the TOWN OF ISLIP's, duty to construct, repair, inspect and/or maintain the aforesaid sign G223 and/or parts thereof in a safe condition.

517. At all times mentioned herein, pursuant to the aforesaid contract, Defendant JKL entirely displaced Defendant AIRPORT CONSULTANTS' duty to construct, repair, inspect and/or maintain the aforesaid sign G223 and/or parts thereof in a safe condition.

518. As a result of the aforesaid negligence, carelessness and recklessness of Defendant JKL, said Defendant launched a force and/or instrument of harm causing Plaintiff serious personal injuries.

519. On September 8, 2021 and prior thereto, Defendant LIPA had a non-delegable duty to ensure that safe and/or appropriate protocols, policies, and/or procedures were in place for management, control, supervision, operation, inspections, repairs and/or maintenance of the electrical grid, electrical systems, electrical equipment, runway lights, transformers, and/or switchgears at MacArthur Airport.

520. On September 8, 2021 and prior thereto, Defendant LIPA was responsible for ensuring that employees, agents, and/or servants of TOWN OF ISLIP and/or of MacArthur Airport were protected from the harms and/or dangers of the electrical grid, including said runway lights, transformers and/or switchgears at MacArthur Airport.

521. On September 8, 2021 and prior thereto, Defendant AIRPORT CONSULTANTS failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized at MacArthur airport as it pertains to electricity/power supply to Runway 6/24.

522. On September 8, 2021 and prior thereto, Defendant AIRPORT CONSULTANTS failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized at MacArthur airport it is pertains to electricity/power supply to Taxiway Golf.

523. On September 8, 2021 and prior thereto, Defendant AIRPORT CONSULTANTS failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized at MacArthur airport it is pertains to electricity/power supply to sign G223.

524. On September 8, 2021 and prior thereto, Defendant AIRPORT CONSULTANTS failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized in the vault.

525. On September 8, 2021 and prior thereto, Defendant AIRPORT CONSULTANTS failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized in the tower.

526. On September 8, 2021 and prior thereto, Defendant BURNS failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized at MacArthur airport it is pertains to electricity/power supply to Runway 6/24.

527. On September 8, 2021 and prior thereto, Defendant BURNS failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized at MacArthur airport it is pertains to electricity/power supply to Taxiway Golf.

528. On September 8, 2021 and prior thereto, Defendant BURNS failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized at MacArthur airport it is pertains to electricity/power supply to sign G223.

529. On September 8, 2021 and prior thereto, Defendant BURNS failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized in the vault.

530. On September 8, 2021 and prior thereto, Defendant BURNS failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized in the tower.

531. On September 8, 2021 and prior thereto, Defendant SAVIK & MURRAY failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized at MacArthur airport it is pertains to electricity/power supply to Runway 6/24.

532. On September 8, 2021 and prior thereto, Defendant SAVIK & MURRAY failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized at MacArthur airport it is pertains to electricity/power supply to Taxiway Golf.

533. On September 8, 2021 and prior thereto, Defendant SAVIK & MURRAY failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized at MacArthur airport it is pertains to electricity/power supply to sign G223.

534. On September 8, 2021 and prior thereto, Defendant SAVIK & MURRAY failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized it the vault.

535. On September 8, 2021 and prior thereto, Defendant SAVIK & MURRAY failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized in the tower.

536. On September 8, 2021 and prior thereto, Defendant SMA failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact

utilized at MacArthur airport it is pertains to electricity/power supply to Runway 6/24.

537. On September 8, 2021 and prior thereto, Defendant SMA failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized at MacArthur airport it is pertains to electricity/power supply to Taxiway Golf.

538. On September 8, 2021 and prior thereto, Defendant SMA failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized at MacArthur airport it is pertains to electricity/power supply to sign G223.

539. On September 8, 2021 and prior thereto, Defendant SMA failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized in the vault.

540. On September 8, 2021 and prior thereto, Defendant SMA failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized in the tower.

541. On September 8, 2021 and prior thereto, Defendant SM failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized at MacArthur airport it is pertains to electricity/power supply to Runway 6/24.

542. On September 8, 2021 and prior thereto, Defendant SM failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized at MacArthur airport it is pertains to electricity/power supply to Taxiway Golf.

543. On September 8, 2021 and prior thereto, Defendant SM failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized at MacArthur airport it is pertains to electricity/power supply to sign G223.

544. On September 8, 2021 and prior thereto, Defendant SM failed to design,

implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized in the vault.

545.   On September 8, 2021 and prior thereto, Defendant SM failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized in the tower.

546.   On September 8, 2021 and prior thereto, Defendant LIPA failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized at MacArthur airport it is pertains to electricity/power supply to Runway 6/24.

547.   On September 8, 2021 and prior thereto, Defendant LIPA failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized at MacArthur airport it is pertains to electricity/power supply to Taxiway Golf.

548.   On September 8, 2021 and prior thereto, Defendant LIPA failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized at MacArthur airport it is pertains to electricity/power supply to sign G223.

549.   On September 8, 2021 and prior thereto, Defendant LIPA failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized it the vault.

550.   On September 8, 2021 and prior thereto, Defendant LIPA failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized in the tower.

551.   On September 8, 2021 and prior thereto, Defendant JKL failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized at MacArthur airport it is pertains to electricity/power supply to Runway 6/24.

552. On September 8, 2021 and prior thereto, Defendant JKL failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized at MacArthur airport it is pertains to electricity/power supply to Taxiway Golf.

553. On September 8, 2021 and prior thereto, Defendant JKL failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized at MacArthur airport it is pertains to electricity/power supply to sign G223.

554. On September 8, 2021 and prior thereto, Defendant JKL failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized in the vault.

555. On September 8, 2021 and prior thereto, Defendant JKL failed to design, implement and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact utilized in the tower.

556. On September 8, 2021, Defendant AIRPORT CONSULTANTS improperly allowed Plaintiff to enter and/or access the transformer site and/or the area adjacent to sign G223.

557. On September 8, 2021 and prior thereto, Defendant BURNS improperly allowed Plaintiff to enter and/or access the transformer site and/or the area adjacent to sign G223.

558. On September 8, 2021 and prior thereto, Defendant SAVIK & MURRAY improperly allowed Plaintiff to enter and/or access the transformer site and/or the area adjacent to sign G223.

559. On September 8, 2021 and prior thereto,, Defendant SMA improperly allowed Plaintiff to enter and/or access the transformer site and/or the area adjacent to sign G223.

560. On September 8, 2021 and prior thereto, Defendant SM improperly allowed

Plaintiff to enter and/or access the transformer site and/or the area adjacent to sign G223.

561.    On September 8, 2021 and prior thereto, Defendant LIPA improperly allowed Plaintiff to enter and/or access the transformer site and/or the area adjacent to sign G223.

562.    On September 8, 2021 and prior thereto, Defendant JKL improperly allowed Plaintiff to enter and/or access the transformer site and/or the area adjacent to sign G223.

563.    At all times hereinafter mentioned and on September 8, 2021, Defendant AIRPORT CONSULTANTS was actively involved in the management, control, supervision, operation, inspections, repairs and/or maintenance of MacArthur Airport's electrical grid and/or systems related thereto and/or more specifically, those that relate to Runway 6/24, Taxiway Golf and/or sign G223.

564.    At all times hereinafter mentioned and on September 8, 2021, Defendant BURNS was actively involved in the management, control, supervision, operation, inspections, repairs and/or maintenance of MacArthur Airport's electrical grid and/or systems related thereto and/or more specifically, those that relate to Runway 6/24, Taxiway Golf and/or sign G223.

565.    At all times hereinafter mentioned and on September 8, 2021, Defendant SAVIK & MURRAY was actively involved in the management, control, supervision, operation, inspections, repairs and/or maintenance of MacArthur Airport's electrical grid and/or systems related thereto and/or more specifically, those that relate to Runway 6/24, Taxiway Golf and/or sign G223.

566.    At all times hereinafter mentioned and on September 8, 2021, Defendant SMA was actively involved in the management, control, supervision, operation, inspections, repairs and/or maintenance of MacArthur Airport's electrical grid and/or systems related thereto and/or more specifically, those that relate to Runway 6/24, Taxiway Golf and/or sign G223.

567. At all times hereinafter mentioned and on September 8, 2021, Defendant SM was actively involved in the management, control, supervision, operation, inspections, repairs and/or maintenance of MacArthur Airport's electrical grid and/or systems related thereto and/or more specifically, those that relate to Runway 6/24, Taxiway Golf and/or sign G223.

568. At all times hereinafter mentioned and on September 8, 2021, Defendant LIPA was actively involved in the management, control, supervision, operation, inspections, repairs and/or maintenance of MacArthur Airport's electrical grid and/or systems related thereto and/or more specifically, those that relate to Runway 6/24, Taxiway Golf and/or sign G223.

569. At all times hereinafter mentioned and on September 8, 2021, Defendant JKL was actively involved in the management, control, supervision, operation, inspections, repairs and/or maintenance of MacArthur Airport's electrical grid and/or systems related thereto and/or more specifically, those that relate to Runway 6/24, Taxiway Golf and/or sign G223.

570. On or about September 8, 2021, while Plaintiff was at the aforementioned transformer site and/or the area adjacent to sign G223, he was caused to sustain severe and permanent injuries.

571. On September 8, 2021 and prior thereto, Defendant AIRPORT CONSULTANTS was listed as an insured on one or more insurance policies offering liability insurance to Defendants in the event that any claim(s) should arise from their work at MacArthur Airport.

572. On September 8, 2021 and prior thereto, Defendant BURNS was listed as an insured on one or more insurance policies offering liability insurance to Defendants in the event that any claim(s) should arise from their work at MacArthur Airport.

573. On September 8, 2021 and prior thereto, Defendant SAVIK & MURRAY was listed as an insured on one or more insurance policies offering liability insurance to Defendants

in the event that any claim(s) should arise from their work at MacArthur Airport.

574. On September 8, 2021 and prior thereto, Defendant SMA was listed as an insured on one or more insurance policies offering liability insurance to Defendants in the event that any claim(s) should arise from their work at MacArthur Airport.

575. On September 8, 2021 and prior thereto, Defendant SM was listed as an insured on one or more insurance policies offering liability insurance to Defendants in the event that any claim(s) should arise from their work at MacArthur Airport.

576. On September 8, 2021 and prior thereto, Defendant JKL was listed as an insured on one or more insurance policies offering liability insurance to Defendants in the event that any claim(s) should arise from their work at MacArthur Airport.

577. On or before September 8, 2021, Defendant AIRPORT CONSULTANTS negligently, recklessly and carelessly caused, permitted and/or allowed the aforesaid transformer site to be, become and remain in a dangerous and defective condition.

578. On or before September 8, 2021, Defendant AIRPORT CONSULTANTS negligently, recklessly and carelessly caused, permitted and/or allowed the aforesaid Runway 6/24 and/or parts thereof to be, become and remain in a dangerous and defective condition.

579. On or before September 8, 2021, Defendant AIRPORT CONSULTANTS negligently, recklessly and carelessly caused, permitted and/or allowed the aforesaid Taxiway Golf and/or parts thereof to be, become and remain in a dangerous and defective condition.

580. On or before September 8, 2021, Defendant AIRPORT CONSULTANTS negligently, recklessly and carelessly caused, permitted and/or allowed the aforesaid sign G223 and/or parts thereof to be, become and remain in a dangerous and defective condition.

581. On or before September 8, 2021, Defendant BURNS negligently, recklessly and

carelessly caused, permitted and/or allowed the aforesaid transformer site to be, become and remain in a dangerous and defective condition.

582. On or before September 8, 2021, Defendant BURNS negligently, recklessly and carelessly caused, permitted and/or allowed the aforesaid Runway 6/24 and/or parts thereof to be, become and remain in a dangerous and defective condition.

583. On or before September 8, 2021, Defendant BURNS negligently, recklessly and carelessly caused, permitted and/or allowed the aforesaid Taxiway Golf and/or parts thereof to be, become and remain in a dangerous and defective condition.

584. On or before September 8, 2021, Defendant BURNS negligently, recklessly and carelessly caused, permitted and/or allowed the aforesaid sign G223 and/or parts thereof to be, become and remain in a dangerous and defective condition.

585. On or before September 8, 2021, Defendant SAVIK & MURRAY negligently, recklessly and carelessly caused, permitted and/or allowed the aforesaid transformer site to be, become and remain in a dangerous and defective condition.

586. On or before September 8, 2021, Defendant SAVIK & MURRAY negligently, recklessly and carelessly caused, permitted and/or allowed the aforesaid Runway 6/24 and/or parts thereof to be, become and remain in a dangerous and defective condition.

587. On or before September 8, 2021, Defendant SAVIK & MURRAY negligently, recklessly and carelessly caused, permitted and/or allowed the aforesaid Taxiway Golf and/or parts thereof to be, become and remain in a dangerous and defective condition.

588. On or before September 8, 2021, Defendant SAVIK & MURRAY negligently, recklessly and carelessly caused, permitted and/or allowed the aforesaid sign G223 and/or parts thereof to be, become and remain in a dangerous and defective condition.

589.    On or before September 8, 2021, Defendant SMA negligently, recklessly and carelessly caused, permitted and/or allowed the aforesaid transformer site to be, become and remain in a dangerous and defective condition.

590.    On or before September 8, 2021, Defendant SMA negligently, recklessly and carelessly caused, permitted and/or allowed the aforesaid Runway 6/24 and/or parts thereof to be, become and remain in a dangerous and defective condition.

591.    On or before September 8, 2021, Defendant SMA negligently, recklessly and carelessly caused, permitted and/or allowed the aforesaid Taxiway Golf and/or parts thereof to be, become and remain in a dangerous and defective condition.

592.    On or before September 8, 2021, Defendant SMA negligently, recklessly and carelessly caused, permitted and/or allowed the aforesaid sign G223 and/or parts thereof to be, become and remain in a dangerous and defective condition.

593.    On or before September 8, 2021, Defendant SM negligently, recklessly and carelessly caused, permitted and/or allowed the aforesaid transformer site to be, become and remain in a dangerous and defective condition.

594.    On or before September 8, 2021, Defendant SM negligently, recklessly and carelessly caused, permitted and/or allowed the aforesaid Runway 6/24 and/or parts thereof to be, become and remain in a dangerous and defective condition.

595.    On or before September 8, 2021, Defendant SM negligently, recklessly and carelessly caused, permitted and/or allowed the aforesaid Taxiway Golf and/or parts thereof to be, become and remain in a dangerous and defective condition.

596.    On or before September 8, 2021, Defendant SM negligently, recklessly and carelessly caused, permitted and/or allowed the aforesaid sign G223 and/or parts thereof to be,

become and remain in a dangerous and defective condition.

597. On or before September 8, 2021, Defendant LIPA negligently, recklessly and carelessly caused, permitted and/or allowed the aforesaid transformer site to be, become and remain in a dangerous and defective condition.

598. On or before September 8, 2021, Defendant LIPA negligently, recklessly and carelessly caused, permitted and/or allowed the aforesaid Runway 6/24 and/or parts thereof to be, become and remain in a dangerous and defective condition.

599. On or before September 8, 2021, Defendant LIPA negligently, recklessly and carelessly caused, permitted and/or allowed the aforesaid Taxiway Golf and/or parts thereof to be, become and remain in a dangerous and defective condition.

600. On or before September 8, 2021, Defendant LIPA negligently, recklessly and carelessly caused, permitted and/or allowed the aforesaid sign G223 and/or parts thereof to be, become and remain in a dangerous and defective condition.

601. On or before September 8, 2021, Defendant JKL negligently, recklessly and carelessly caused, permitted and/or allowed the aforesaid transformer site to be, become and remain in a dangerous and defective condition.

602. On or before September 8, 2021, Defendant JKL negligently, recklessly and carelessly caused, permitted and/or allowed the aforesaid Runway 6/24 and/or parts thereof to be, become and remain in a dangerous and defective condition.

603. On or before September 8, 2021, Defendant JKL negligently, recklessly and carelessly caused, permitted and/or allowed the aforesaid Taxiway Golf and/or parts thereof to be, become and remain in a dangerous and defective condition.

604. On or before September 8, 2021, Defendant JKL negligently, recklessly and

carelessly caused, permitted and/or allowed the aforesaid sign G223 and/or parts thereof to be, become and remain in a dangerous and defective condition.

605. On September 8, 2021, Defendant VASHTI DEONARAIN was responsible for turning Runway 6/24 lights on and off.

606. On September 8, 2021, Defendant VASHTI DEONARAIN was responsible for turning Taxiway Golf lights on and off.

607. On September 8, 2021, Defendant VASHTI DEONARAIN was responsible for turning sign G223 lights on and off.

608. On September 8, 2021, Defendant VASHTI DEONARAIN was responsible for turning electricity/power supply to Runway 6/24 on and off.

609. On September 8, 2021, Defendant VASHTI DEONARAIN was responsible for turning electricity/power supply to Taxiway Golf on and off.

610. On September 8, 2021, Defendant VASHTI DEONARAIN was responsible for turning electricity/power supply to sign G223 on and off.

611. On September 8, 2021, Defendant VASHTI DEONARAIN received radio transmissions concerning signage on the airfield at MacArthur Airport.

612. On September 8, 2021, Defendant VASHTI DEONARAIN received radio transmissions from a non-party decedent MICHAEL JAKOB concerning signage on the airfield at MacArthur Airport.

613. On September 8, 2021, Defendant VASHTI DEONARAIN received radio transmissions from a non-party decedent MICHAEL JAKOB requesting to turn Taxiway Golf lights/power off.

614. On September 8, 2021, Defendant VASHTI DEONARAIN received radio

transmissions from a non-party decedent MICHAEL JAKOB requesting to turn 624 edge lights/power off.

615. On September 8, 2021, Defendant VASHTI DEONARAIN received radio transmissions from a non-party decedent MICHAEL JAKOB requesting to turn sign G223 lights/power off.

616. On September 8, 2021, Defendant VASHTI DEONARAIN was aware of a non-party decedent MICHAEL JAKOB's request to turn Taxiway Golf lights/power off.

617. On September 8, 2021, Defendant VASHTI DEONARAIN was aware of a non-party decedent MICHAEL JAKOB's request to turn 624 edge lights/power off.

618. On September 8, 2021, Defendant VASHTI DEONARAIN was aware of a non-party decedent MICHAEL JAKOB's request to turn sign G223 lights/power off.

619. On September 8, 2021, Defendant VASHTI DEONARAIN was aware of a non-party decedent MICHAEL JAKOB's request to de-energize the field, Taxiway Golf and/or sign G223 due to work being performed on sign G223 which was supplied with live electricity/power.

620. On September 8, 2021, Defendant VASHTI DEONARAIN failed to de-energize Taxiway Golf.

621. On September 8, 2021, Defendant VASHTI DEONARAIN failed to de-energize Runway 6/24.

622. On September 8, 2021, Defendant VASHTI DEONARAIN failed to de-energize 624 edge lights.

623. On September 8, 2021, Defendant VASHTI DEONARAIN failed to de-energize sign G223 lights.

624. On September 8, 2021, Defendant VASHTI DEONARAIN failed to de-energize the field and/or the subject sign.

625. On September 8, 2021, Defendant VASHTI DEONARAIN failed to properly, adequately and/or fully de-energize Taxiway Golf.

626. On September 8, 2021, Defendant VASHTI DEONARAIN failed to properly, adequately and/or fully de-energize Runway 6/24.

627. On September 8, 2021, Defendant VASHTI DEONARAIN failed to properly, adequately and/or fully de-energize 624 edge lights.

628. On September 8, 2021, Defendant VASHTI DEONARAIN failed to properly, adequately and/or fully de-energize sign G223 lights.

629. On September 8, 2021, Defendant VASHTI DEONARAIN failed to properly, adequately and/or fully de-energize the field and/or the subject sign.

630. On or before September 8, 2021, Defendant VASHTI DEONARAIN negligently, recklessly and carelessly caused, permitted and/or allowed the aforesaid transformer site to be, become and remain in a dangerous and defective condition.

631. On or before September 8, 2021, Defendant VASHTI DEONARAIN negligently, recklessly and carelessly caused, permitted and/or allowed the aforesaid Runway 6/24 and/or parts thereof to be, become and remain in a dangerous and defective condition.

632. On or before September 8, 2021, Defendant VASHTI DEONARAIN negligently, recklessly and carelessly caused, permitted and/or allowed the aforesaid Taxiway Golf and/or parts thereof to be, become and remain in a dangerous and defective condition.

633. On or before September 8, 2021, Defendant VASHTI DEONARAIN negligently, recklessly and carelessly caused, permitted and/or allowed the aforesaid sign G223 and/or parts

thereof to be, become and remain in a dangerous and defective condition.

634.    On September 8, 2021, Defendants, their agents, servants, employees, agencies and/or departments turned the power back on for Taxiway Golf while Plaintiff and a non-party decedent MICHAEL JAKOB were still working on sign G223.

635.    On September 8, 2021, Defendants, their agents, servants, employees, agencies and/or departments turned the power back on for the field while Plaintiff and a non-party decedent MICHAEL JAKOB were still working on sign G223.

636.    On September 8, 2021, Defendants, their agents, servants, employees, agencies and/or departments turned the power back on for sign G223 while Plaintiff and a non-party decedent MICHAEL JAKOB were still working on sign G223.

637.    On or about September 8, 2021, while Plaintiff was lawfully within the grounds of MacArthur Airport, Plaintiff was caused to be seriously injured.

638.    On or about September 8, 2021, Plaintiff was caused to be electrocuted and/or otherwise seriously injured as a direct and proximate result of the Defendants' negligence.

639.    On or about September 8, 2021, Plaintiff was seriously injured.

640.    The aforesaid occurrence was due to the negligence, carelessness and recklessness of Defendants, their agents, servants, employees, agencies and/or departments in the ownership, operation, installation, management, control, maintenance, supervision, inspection and/or repair of the aforesaid transformer site and/or through no fault or lack of care on the part of the Plaintiff herein.

641.    The aforesaid occurrence was due to the negligence, carelessness and recklessness of Defendants, their agents, servants, employees, agencies and/or departments in the ownership, operation, installation, management, control, maintenance, supervision, inspection and/or repair

of the aforesaid Runway 6/24 and/or parts thereof and through no fault or lack of care on the part of the Plaintiff herein.

642. The aforesaid occurrence was due to the negligence, carelessness and recklessness of Defendants, their agents, servants, employees, agencies and/or departments in the ownership, operation, installation, management, control, maintenance, supervision, inspection and/or repair of the aforesaid Taxiway Golf and/or parts thereof and through no fault or lack of care on the part of the Plaintiff herein.

643. The aforesaid occurrence was due to the negligence, carelessness and recklessness of Defendants, their agents, servants, employees, agencies and/or departments in the ownership, operation, installation, management, control, maintenance, supervision, inspection and/or repair of the aforesaid sign G223 and/or parts thereof and through no fault or lack of care on the part of the Plaintiff herein.

644. The aforesaid occurrence was due to the negligence, carelessness and recklessness of Defendants, their agents, servants, employees, agencies and/or departments in their failure to design, implement, follow and/or otherwise ensure that a Lockout/Tagout procedure existed and was in fact followed at MacArthur airport on the date of the incident and prior thereto.

645. The aforesaid occurrence was due to the negligence, carelessness and recklessness of Defendants, their agents, servants, employees, agencies and/or departments in their failure to design, implement, follow and/or otherwise ensure that a Lockout/Tagout procedure existed in the vault and was in fact followed on the date of the incident and prior thereto.

646. The aforesaid occurrence was due to the negligence, carelessness and recklessness of Defendants, their agents, servants, employees, agencies and/or departments in their failure to design, implement, follow and/or otherwise ensure that a Lockout/Tagout procedure existed in

the tower and was in fact followed on the date of the incident and prior thereto.

647. The aforesaid occurrence was due to the negligence, carelessness and recklessness of Defendants, their agents, servants, employees, agencies and/or departments in their failure to turn off the power/electricity for Taxiway Golf and through no fault or lack of care on the part of the Plaintiff herein.

648. The aforesaid occurrence was due to the negligence, carelessness and recklessness of Defendants, their agents, servants, employees, agencies and/or departments in their failure to turn off the power/electricity for Runway 6/24 and through no fault or lack of care on the part of the Plaintiff herein.

649. The aforesaid occurrence was due to the negligence, carelessness and recklessness of Defendants, their agents, servants, employees, agencies and/or departments in their failure to turn off the power/electricity for sign G223 and through no fault or lack of care on the part of the Plaintiff herein.

650. The aforesaid occurrence was due to the negligence, carelessness and recklessness of Defendants, their agents, servants, employees, agencies and/or departments in their failure to properly, adequately and/or fully turn off the power/electricity for Taxiway Golf and through no fault or lack of care on the part of the Plaintiff herein.

651. The aforesaid occurrence was due to the negligence, carelessness and recklessness of Defendants, their agents, servants, employees, agencies and/or departments in their failure to properly, adequately and/or fully turn off the power/electricity for Runway 6/24 and through no fault or lack of care on the part of the Plaintiff herein.

652. The aforesaid occurrence was due to the negligence, carelessness and recklessness of Defendants, their agents, servants, employees, agencies and/or departments in their failure to

properly, adequately and/or fully turn off the power/electricity for sign G223 and through no fault or lack of care on the part of the Plaintiff herein.

653. The aforesaid occurrence was due to the negligence, carelessness and recklessness of Defendants, their agents, servants, employees, agencies and/or departments in turning the power/electricity back on for Taxiway Golf while Plaintiff and a non-party decedent MICHAEL JAKOB were still working on sign G223 and through no fault or lack of care on the part of the Plaintiff herein.

654. The aforesaid occurrence was due to the negligence, carelessness and recklessness of Defendants, their agents, servants, employees, agencies and/or departments in turning the power/electricity back on for Runway 6/24 while Plaintiff and a non-party decedent MICHAEL JAKOB were still working on sign G223 and through no fault or lack of care on the part of the Plaintiff herein.

655. The aforesaid occurrence was due to the negligence, carelessness and recklessness of Defendants, their agents, servants, employees, agencies and/or departments in turning the power/electricity back on for sign G223 while Plaintiff and a non-party decedent MICHAEL JAKOB were still working on sign G223 and through no fault or lack of care on the part of the Plaintiff herein.

656. This action falls within one or more of the exceptions set forth in CPLR § 1602 including, but not limited to, subsections (2) and (7).

657. As a result of the aforesaid, Plaintiff was caused to sustain serious personal injuries, a severe shock to his nervous system and certain internal injuries and has been caused to suffer severe physical pain as a result thereof. Some of the aforesaid injuries are of a permanent and lasting nature. Plaintiff was incapacitated from his usual and customary

activities and was caused to undergo medical care and attention all of which exceed the monetary jurisdictional limits of all lower courts of the State of New York.

658. That by reason of the foregoing, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower courts.

**AS AND FOR A FIRST CAUSE OF ACTION FOR AGAINST ALL DEFENDANTS**

659. Plaintiff repeats, reiterates and realleges each and every allegation contained hereinabove in paragraphs "1" through "658", inclusive with the same force and effect as if hereinafter set forth at length.

660. Supplying electricity to MacArthur Airport and/or parts thereof via the electrical grid was an inherently dangerous activity.

661. On September 8, 2021 and prior thereto, Defendants had a nondelegable duty to ensure the MacArthur Airport electrical grid, electrical systems, electrical equipment, and/or runway lights, including transformers and/or switchgears related to same, were safely designed, installed, constructed, owned, operated, maintained, managed, supervised, serviced, repaired, controlled, and/or inspected.

662. On September 8, 2021 and prior thereto, Defendants had a nondelegable duty to ensure that there existed an adequate Lockout/Tagout procedure in the vault, in the tower and in all other places/areas which controlled the MacArthur Airport electrical grid, electrical systems, electrical equipment, and/or runway lights, including transformers and/or switchgears related to same, including, but not limited to, Runway 6/24, Taxiway Golf and/or sign G223.

663. On September 8, 2021 and prior thereto, Defendants had a nondelegable duty to ensure that the airport workers, including Plaintiff herein, with access to MacArthur Airport's electrical grid, electrical systems, electrical equipment, and/or runway lights, including

transformers and/or switchgears related to same were adequately trained.

664. On September 8, 2021 and prior thereto, Defendants had a nondelegable duty to ensure that agents, servants and/or employees of TOWN OF ISLIP working at, within, on or about MacArthur Airport's electrical grid, electrical systems, electrical equipment, and/or runway lights, including transformers and/or switchgears related to same, including Plaintiff herein, were protected from inherently dangerous activity.

665. On September 8, 2021 and prior thereto, Defendants had a duty to perform any and all work on MacArthur Airport's electrical grid, electrical systems, electrical equipment, and/or runway lights, including transformers and/or switchgears related thereto.

666. On September 8, 2021 and prior thereto, Defendants had a duty to perform any and all work on MacArthur Airport's electrical grid, electrical systems, electrical equipment, and/or runway lights, including transformers and/or switchgears related thereto in a competent and safe manner.

667. On September 8, 2021 and prior thereto, Defendants had a duty to supervise any and all work that was performed on MacArthur Airport's electrical grid, electrical systems, electrical equipment, and/or runway lights, including transformers and/or switchgears related thereto.

668. On September 8, 2021 and prior thereto, Defendants had a duty to ensure that MacArthur Airport was safe for all agents, servants and/or employees of the TOWN OF ISLIP and/or of MacArthur Airport, including Plaintiff herein, that were within the scope of their employment on MacArthur Airport's electrical grid, electrical systems, electrical equipment, runway lights, including its transformers and/or switchgears related thereto.

669. Defendants breached their respective duties.

670. On or about September 8, 2021, while Plaintiff was lawfully within the grounds of MacArthur Airport, Plaintiff was caused to be seriously injured.

671. On or about September 8, 2021, Plaintiff was caused to be electrocuted and/or otherwise seriously injured as a direct and proximate result of the Defendants' negligence.

672. On or about September 8, 2021, Plaintiff was seriously injured.

673. Defendants were negligent in failing to perform their work involving MacArthur Airport's electrical grid in a safe and reasonable manner; in launching the instrument of harm; in turning the electricity/power for sign G223, Taxiway Golf and/or Runway 6/24 back on while Plaintiff and a non-party decedent MICHAEL JAKOB were still working on sign G223; in failing to turn the electricity/power for sign G223, Taxiway Golf and/or Runway 6/24 off; in failing to properly, adequately and/or fully turn the electricity/power for sign G223, Taxiway Golf and/or Runway 6/24 off; in failing to attach to sign G223 itself instructions for turning sign G223's power/electricity off in the vault; in failing to attach to sign G223 itself instructions explaining how to properly, adequately, safely and/or fully turn the power/electricity off for sign G223; in failing to train the airport workers including Plaintiff and a non-party decedent MICHAEL JAKOB on how to properly, adequately, safely and/or fully turn the power/electricity off for sign G223, Taxiway Golf and/or Runway 6/24; in failing to have staff on-site to manage, operate, control, supervise, maintain, monitor, repair, inspect, and/or otherwise oversee the electrical grid electrical systems, electrical equipment including all transformers and/or switchgears related thereto; in allowing non-trained individuals, including a non-party decedent MICHAEL JAKOB and Plaintiff, a new hire, to enter dangerous and hazardous areas involving the electrical grid at MacArthur Airport; in failing to cut the power in the area where a non-party decedent MICHAEL JAKOB and Plaintiff were working; in failing

to have safety measures in place to ensure power was cut when individuals, including a non-party decedent MICHAEL JAKOB and Plaintiff, were working thereat; in failing to implement and/or actually enforce safety policies, procedures, and/or protocols with regards to the electrical grid, transformers, and/or switchgears situated at MacArthur Airport; in failing to repair the electrical grid on September 8, 2021 and/or prior thereto; in causing and creating the dangerous condition by failing to safely and properly construct, reconstruct, install, design, control, operate, repair, inspect, supervise, manage, and/or maintain the electrical grid, including transformers and/or switchgears related thereto at MacArthur Airport; in causing, permitting and/or allowing the dangerous condition to exist by failing to maintain the electrical grid, including transformers and/or switchgears related thereto at MacArthur Airport; in failing to warn of the hazards, dangers, and/or risks posed by the electrical grid, including the transformers and/or switchgears related thereto, at MacArthur Airport; in failing to design, implement and/or otherwise ensure that there existed an adequate Lockout/Tagout procedure in the vault, in the tower and in all other places/areas which controlled the MacArthur Airport electrical grid, electrical systems, electrical equipment, and/or runway lights, including transformers and/or switchgears related to same, including, but not limited to, Runway 6/24, Taxiway Golf and/or sign G223.

674. Defendants, their agents, servants, employees, departments, agencies, contractors, subcontractors, licensees and/or other affiliates, were similarly negligent, careless, reckless, and/or gross negligent: in causing, permitting and/or allowing sign G223 and/or its transformer and/or other parts thereof to be, become and remain in a dangerous and defective condition for an unreasonable length of time; in causing, permitting and/or allowing a hazard to exist at or about the complained of location; in causing, permitting and/or allowing a deadly condition to

exist at or about the complained of location; in causing, permitting and/or allowing the complained of hazardous, dangerous and/or deadly condition(s) to exist at the aforesaid location; in causing, permitting and/or allowing the complained of hazardous, dangerous and/or deadly condition(s) to interfere with and prevent Plaintiff from safe participation in his training/work duties; in failing to restrict Plaintiff and/or others access to a dangerous, hazardous and/or deadly condition(s); in failing to take suitable and proper precautions for the safety of persons on and/or working and/or using the complained of location/sign; in failing to take adequate precautionary measures to protect those who are lawfully upon the complained of location, thereby creating a menace to the safety of the Plaintiff; in failing to inspect the complained of location; in failing to inspect the complained of sign and/or parts thereof; in failing to confirm, inspect and/or ensure that there was no electrical issues/defects/malfunction(s) at the complained of sign G223 and/or Runway 6/24 and/or Taxiway Golf; in failing to confirm, inspect and/or ensure that there was no electrical issues/defects/malfunction(s) at the complained of sign G223 and/or Runway 6/24 and/or Taxiway Golf; in failing to properly and/or adequately inspect the complained of location; in failing to properly and/or adequately inspect the complained of sign G223 and/or parts thereof; in failing to properly and/or adequately confirm, inspect and/or ensure that there was no electrical issues/defects/malfunction(s) at the complained of sign G223 and/or parts thereof; in failing to properly and/or adequately confirm, inspect and/or ensure that there was no electrical issues/defects/malfunction(s) at the complained of location; in failing to warn Plaintiff and/or other persons of the hazardous, dangerous and/or deadly condition(s) then and there existing; in failing to properly and/or adequately warn Plaintiff and/or other persons of the hazardous, dangerous and/or deadly condition(s) then and there existing; in failing to employ competent

and/or adequately trained staff; in causing, permitting and/or allowing Plaintiff to be physically and psychologically injured; in causing, permitting and/or allowing Plaintiff to witness JAKOB get electrocuted and ultimately die; in causing, permitting and/or allowing Plaintiff to suffer the fear of his own impending death; in failing to take reasonable measures to supervise and/or control the conduct of their agents, servants and/or employees so as to ensure that the complained of location/sign G223 and/or parts thereof were reasonably safe and/or secure for the health and well-being of those lawfully utilizing and/or working on same; in causing, permitting and/or allowing the subject incident to occur while being on notice of the careless and/or negligent practices on the part of their agents, servants and/or employees; in exhibiting gross indifference to and/or reckless disregard for human life and safety of others, and more particularly, Plaintiff herein; in failing to take reasonable measures to supervise and/or control the conduct of their agents, servants and/or employees as to ensure that the complained of location/sign and/or parts thereof were reasonably safe and/or secure for the health and well-being of those lawfully utilizing and/or working on same; in recklessly, carelessly and/or negligently screening, qualifying, placing, hiring and/or training their agents, servants and/or employees; in breaching their duty to properly design, re-design, install, construct, re-construct, rehabilitate, upgrade, remodel, operate, repair, inspect, manage, maintain, control, and/or supervise the complained of location/sign G223, Taxiway Golf and/or Runway 6/24 and/or parts thereof and/or keep the complained of location/sign G223, Taxiway Golf and/or Runway 6/24 in a reasonably safe condition; in disregarding their duty and/or failing to use reasonable care in maintaining a safe environment; in failing to exercise due care and/or reasonable precaution in maintaining a safe and/or secure environment at the complained of location; in recklessly, carelessly and/or negligently failing to investigate the credentials of their agents,

servants and/or employees; in failing to keep the complained of location/sign G223 and/or parts thereof safe and/or secure; in exhibiting utter indifference for the safety of others, and specifically, the safety of Plaintiff herein; in showing conscious disregard for the safety of others, and specifically, the safety of Plaintiff herein; in exhibiting a reckless disregard for human life and/or safety, and more particularly, for the life and safety of Plaintiff; in exhibiting gross indifference to and/or reckless disregard for human life and/or safety of others, and more particularly, Plaintiff herein; in negligently, carelessly and recklessly causing, allowing and/or permitting Plaintiff to be harmed and/or injured; in negligently, carelessly and/or recklessly failing to provide adequate security and/or protection for Plaintiff; in failing to perform those duties that were owed to Plaintiff; in failing to design, construct, maintain, install, supervise and/or operate the complained of location/sign G223, Taxiway Golf and/or Runway 6/24 and/or parts thereof in a manner which provided for reasonable safety and/or security of the persons utilizing same, including Plaintiff; in failing to adequately supervise the airport, the complained of location and/or the complained of sign; in failing to prevent the occurrence complained of herein, thereby permitting, causing and/or allowing physical, psychological and/or emotional injuries to be sustained by Plaintiff herein; and in causing, allowing and/or permitting the complained of location, sign G223, Taxiway Golf and/or Runway 6/24 to be, become and remain in a dangerous, hazardous and/or deadly condition(s) for an unreasonable length of time.

675. Defendants were further negligent in their design, construction, re-construction, rehabilitation, installation, upgrade, operation, maintenance, repair, supervision, inspection, management, control and/or remodeling of Runway 6/24, Taxiway Golf, and/or sign G223 as well as the runway lights, electrical systems, electrical fixtures, electrical equipment, transformers, switchgears and/or other components to MacArthur Airport's electrical grid in

place at MacArthur Airport, Town of Islip, State of New York.

676. Defendants were further negligent in failing to perform their work involving MacArthur Airport's electrical grid in a safe and reasonable manner; in launching the instrument of harm; in failing to have staff on-site to manage, operate, control, supervise, maintain, monitor, repair, inspect, and/or otherwise oversee the electrical grid, electrical systems, electrical equipment including all transformers and/or switchgears related thereto; in failing to have safety measures in place to ensure power was cut when individuals, including Plaintiff and JAKOB, were working thereat; in failing to implement and/or actually enforce safety policies, procedures, and/or protocols with regards to the electrical grid, transformers, and/or switchgears situated at MacArthur Airport; in failing to repair the electrical grid on September 8, 2021 and/or prior thereto; in causing and creating the dangerous condition by failing to safely and properly construct, reconstruct, install, design, control, operate, repair, inspect, supervise, manage, and/or maintain the electrical grid, including transformers and/or switchgears related thereto at MacArthur Airport; in causing, permitting and/or allowing the dangerous condition to exist by failing to maintain the electrical grid, including transformers and/or switchgears related thereto at MacArthur Airport; and in failing to warn of the hazards, dangers, and/or risks posed by the electrical grid, including the transformers and/or switchgears related thereto, at MacArthur Airport.

677. Plaintiff did not contribute to the happening of the occurrence.

678. Defendants are jointly and severally liable for the above negligence.

679. The limitations on liability set forth in CPLR §1601 do not apply to this action.

680. This action falls within one or more of the exceptions set forth in CPLR § 1602 including, but not limited to, subsections (2) and (7).

681. As a result of the aforesaid, Plaintiff was caused to sustain serious personal injuries, a severe shock to his nervous system and certain internal injuries and has been caused to suffer severe physical pain as a result thereof. Some of the aforesaid injuries are of a permanent and lasting nature. Plaintiff was incapacitated from his usual and customary activities and was caused to undergo medical care and attention all of which exceed the monetary jurisdictional limits of all lower courts of the State of New York.

682. That by reason of the foregoing, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower courts.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS**

683. Plaintiff repeats, reiterates and realleges each and every allegation contained hereinabove in paragraphs "1" through "682", inclusive with the same force and effect as if hereinafter set forth at length.

684. The aforesaid transformer site constituted a nuisance, a trap and/or dangerous condition for the public and more particularly for Plaintiff herein.

685. The aforesaid Runway 6/24 and/or parts thereof constituted a nuisance, a trap and/or dangerous condition for the public and more particularly for Plaintiff herein.

686. The aforesaid Taxiway Golf and/or parts thereof constituted a nuisance, a trap and/or dangerous condition for the public and more particularly for Plaintiff herein.

687. The aforesaid sign G223 and/or parts thereof constituted a nuisance, a trap and/or dangerous condition for the public and more particularly for Plaintiff herein.

688. As a direct and proximate result of the aforesaid negligence, the Plaintiff was caused to sustain serious personal injuries that included pain, suffering, mental anguish, emotional distress, loss of enjoyment of life, and economic damages.

689.     Defendants are jointly and severally liable.

690.     By reason of the foregoing, Plaintiff demands all damages permitted by law.

691.     This action falls within one or more of the exceptions set forth in CPLR § 1602 including, but not limited to, subsections (2) and (7).

692.     As a result of the aforesaid, Plaintiff was caused to sustain serious personal injuries, a severe shock to his nervous system and certain internal injuries and has been caused to suffer severe physical pain as a result thereof. Some of the aforesaid injuries are of a permanent and lasting nature. Plaintiff was incapacitated from his usual and customary activities and was caused to undergo medical care and attention all of which exceed the monetary jurisdictional limits of all lower courts of the State of New York.

**WHEREFORE**, Plaintiff demands judgment against Defendants in an amount which exceeds the monetary jurisdictional limits of all lower Courts of the State of New York, together with the costs and disbursements of this action.

Dated:  Bohemia, New York
          February 12, 2024

                                        Yours, etc.

                                        _____
                                        SVETLANA WALKER, ESQ.
                                        WALKER & MACKENZIE, P.C.
                                        Attorneys for Plaintiff
                                        1650 Sycamore Avenue, Suite 19
                                        Bohemia, New York 11716
                                        Phone: (631) 791-5090
                                        Fax:    (631) 791-5095
                                        swalker@walkermackenzielaw.com
                                        www.walkermackenzielaw.com